## RYAN *vs.* LIEBER *et al.*

1. Why is not a transfer of an execution by plaintiff's attorney good as an equitable assignment, the plaintiff having received the money paid on the assignment?

2. A levy of personal property which has been dismissed by plaintiff or plaintiff's attorney, without being productive, and when no injury has resulted from such dismissal, sufficiently accounts for, and explains such levy to authorize plaintiff to proceed with its collection, and to enable it to participate in the distribution of a fund in Court raised from the sale of the defendant's property according to its priority.

*Certiorari*, in Chatham Superior Court.    Tried before Judge FLEMING, and decided at vacation, on 14th August, 1859.

Mr. Justice LYON sufficiently states the facts of this case in his opinion.

E. H. BACON, for plaintiff in error.

HARDEN & GUERRARD, for defendant in error.

*By the Court.*—LYON, J., delivering the opinion.

The facts in this case briefly are : On the 5th day of May, 1859, O'Connor & Cullender obtained a judgment against William R. Vallum in the Sixth Circuit Court of the United States for the Southern District of Georgia.    On the 7th day of July of the same year, Isaac Lieber obtained a judgment in the same Court against the same defendant, and at the November Term of the City Court of Savannah, Alfred Haywood obtained judgment against the same defendant.    From all of said judgments, executions issued.    The *fi. fa.* that issued from the judgment in favor of O'Connor & Cullender, was levied on "four billiard tables, balls, cues, maces," etc., attached to the same on 5th June, 1859.    On 31st August following, plaintiffs, by their Attorneys, tranferred this execution to John Ryan, who dismissed the levy.    The transfer is as follows :

"For and in consideration of the sum of four hundred and ninety-nine dollars and fifty-nine cents, to us in hand paid, by John Ryan, we hereby transfer the within *fi. fa.* to him, (said sum above named being the balance due on said *fi. fa.*,) and also the judgment on which said execution issued, to be collected at his own costs and charges, without recourse on the plaintiff or us.

  (Signed)   "O'CONNOR & CULLENDER,
       "By our attorneys, BACON & LEVY."

The *fi. fa.* in favor of Alfred Haywood was subsequently levied on "four billiard tables, balls, cues, maces, etc., attached to the same." Under this last levy, the propety was sold and the money arising from the sale brought into the City Court for distribution, and was claimed by all the above stated executions. On a motion to distribute, junior judgment creditors to that so controlled by Ryan, moved its exclusion from a participation in this fund on three grounds:

1st. That a levy upon personal property and the dismissal thereof by the assignee amounts to a satisfaction, so far as third persons are concerned.

2d. That the assignment of the execution was void, an attorney of record not being able to execute the same without express power from the client.

3d. That the amount due on the executions appearing to be paid, it is *functus officio*.

The City Court excluded the execution, and ordered the money paid over to a junior execution, holding that the assignment was void; that the levy was dismissed, consequently, by one having no authority to do so, and was still unaccounted for, and being unexplained, was *prima facie* satisfied, but that, conceding the assignment to be good, still, as the levy had been unproductive by the fault of the assignee, the lien as to the prior judgments was extinguished. The case having been carried to the Superior Court on *certiorari*, that Court reversed the judgment of the City Court, on the objection to the assignment, holding that, under the peculiar facts of the case, the assignee was not excluded, on the ground that the transfer was made by the plaintiff's attorneys, but affirmed the judgment as to the effect of the levy and its subsequent dismissal. To that decision plaintiffs excepted. That is the only question properly before us, as

there is no exception to the decision upon the sufficiency of the assignment; hence, we do not decide that question, but, as it has been argued and considered to some extent, we do not hesitate to give it, as the present impression of the Court, that if the assignment is not good, as a legal transfer, so as to vest the legal title in the assignee, that it is sufficient to convey to the assignee such an equitable interest in the *fi. fa.* and judgment as will enable the assignee to use the same in the name of the plaintiff for its collection. Why not? The assignee has advanced the money to the plaintiff, through their attorneys, on the faith of their agreement, for the plaintiffs, that he shall have the use of the execution and judgment for his reimbursement. The plaintiffs have received the money and got the full benefit of it. The fair presumption is, that they have ratified the act of their attorney, and if they have not, they must return the money, placing the assignee where they found him; and until they do this, ought the assignee not to have the benefit of that part of the contract, which is in his favor? But, as I have stated, we do not regard this as a settlement of the question, but as an expression of opinion merely, which is open to review.

Then, as to the other question, both the City and Superior Courts base their judgments on decisions of this Court, which they say have settled the question, that a levy on personal property and a dismissal of that levy by the plaintiff displaces the lien of such execution as to junior judgment creditors. We deny that this Court has so decided, and I proceed at once to the consideration of those cases in which it is claimed that the Court so decided. The first case is that of *Curan vs. Colbert,* 3 *Kelly,* 239. Curan was surety for one Tharp, to Colbert, for $250 00. Colbert sued the debt to judgment against both Tharp and Curan, and Curan pointed out sufficient property to pay the debt of Tharp's, who was then solvent. The property was levied on and released, Colbert taking Tharp's "word that he would pay at Christmas, without Curan's consent, before the expiration of the time." Tharp removed all of his property out of the State, and was insolvent. Colbert subsequently, and in the absence of Curan, levied on a wagon and team of Curan's and bought it at half its value under this execution. Curan brought trover for the wagon and team, and pending that action, filed a bill

for discovery, etc. The bill was dismissed for want of equity by the Circuit Court. This Court, on a review of that decision, held that there was equity in the bill, and who will say that there was not? Yet, that was the whole of that decision, so far as the Court was concerned. What had a dismissal of the levy, so far as the rights of junior judgment creditors have to do with that decision? It is true, that the member of this Court who wrote out the opinion in that case, used some very strong expressions as to the effect of a dismissal of the levy, etc., but they are mere dicta, by which the Court is not bound, has never pretended to be, but from its very organization has disclaimed them. It would be most strange and unjust, too, to the Court, the law and the rights of parties to have grave and important questions forever settled, when not made, by a loose and unguarded expression falling from one member of the Court on argument. But the effect of these dicta have too long been known and well understood by the profession at large to require from me a further consideration of them. It is sufficient to say, that the question before this Court now, was not in that case, nor there decided.

The next case referred to in support of the decision of the Court below, is that of *Newsome vs. McLendon*, 4 *Ga.*, 392. Newsome and others filed a bill alleging that, as sureties for Wormack, they had been compelled to pay large sums of money, and for their indemnity, he had conveyed to them in 1840 the premises on which he lived; that Wormack and one Jesse McLendon had been partners and had given their note to one Brown for some property, which became partnership property; that on the dissolution of the firm, the entire effects of the firm went into McLendon's hands, including the property for which the note was given to Brown. Brown obtained separate judgments on his notes before the date of conveyance from Wormack to the complainants; that the execution against McLendon was levied on an amount of property sufficient to have paid the same, and before the day of sale, Freeman and Jeremiah McLendon, with the assistance of, and for the purpose of enabling Jesse McLendon to have and to hold all the effects of the partnership to his own use, paid off the *fi. fa.* against Jesse McLendon, dismissed the levy on the same, caused an execution to be issued against and levied on the premises conveyed to them for their indem-

nity; that Wormack was wholly insolvent and dead; that McLendon was solvent—had the effects of the firm in his hands to pay the debt; that at the time of the transfer to Freeman and Jeremiah McLendon by Brown, *Jesse McLendon paid a large portion of the money, and since that time has reimbursed Freeman and Jeremiah the amount they advanced for him on the fi. fa.* The bill was filed for discovery and injunction. The Judge of the Circuit Court refused the injunction, and this Court decided that the complainants were entitled to the injunction, and the true grounds on which the decision was put, were, that the debt had been paid, and a discovery was necessary to prove the fact, and the additional one, which was the controlling one in the decision, was, that the debt was a partnership debt, and there were partnership effects sufficient to pay it, and these partnership effects must, in equity, be exhausted before the separate property of the members of the firm could be reached. Judge NISBET, who wrote the opinion himself, never thought of putting the decision on the ground of a dismissal of the levy being a satisfaction or extinguishment of the lien, as to junior judgment creditors, who were not in the case, but as a question between partners and the sureties of one of them. He says: "Nor can I doubt but that a levy on personal property of one partner sufficient to pay the debt and dismissed by the plaintiff, with the consent of the defendant, would discharge the other partner." This is sufficient to show that he viewed what he was saying on this head, as but an argument; but whether he did or not, the question before us was not in that case, was not decided by the Court, nor was it necessary to sustain that decision to invoke this principal so well discussed in that case by the able jurist who pronounced that opinion.

The other case relied on is that of *Lynch vs. Pressly,* 8 *Ga.,* 330. That was a claim case. On the trial, the execution offered in evidence had a former levy indorsed on it of two negroes, which were claimed, but not otherwise disposed of. The Court below ruled it out, on the ground that the levy was evidence of satisfaction, and the plaintiff must show that it was unproductive without his fault. This Court, in deciding that case, held that the levy was accounted for by the evidence of tho plaintiff's attorney; that he had dismissed the levy for a want of proof to condemn the property.

This case, instead of deciding as the Court below, rather

intimated the other way. The Court was content with a weak sort of explanation, and Judge Lumpkin certainly did deny that the Court had decided the question as claimed, and said that the complainants in *Newsome vs. McLendon* were entitled to the relief, upon the grounds wholly independent of that dismissal of the levy; and all will agree with me, that the other grounds of equity in that case constituted the gravamen of the bill.

But that this Court has regarded the question as an open one, I refer to *Marshall vs. Morris*, 13 *Ga.*, 185. That was a claim case, and when the execution was offered in evidence, there appeared to be a former levy on it of some negroes, which had not been disposed of. The negroes were insufficient to pay the debt, and had been left, and continued in the possession of the claimant, the wife of defendant in execution. This Court said, that there was authority for the proposition, that a levy undisposed of is satisfaction, and a second execution cannot issue, and again, while it is not satisfaction as to defendant, it is as to third persons. Judge Lumpkin referred to *Banks vs. Evans*, 10 *Sm. & M.*, 35, and quotes the conclusion, which is: "That a levy on property is not payment, but only constructively so, to prevent wrong. It is deemed a payment in those cases where, if it were not, the defendant would be twice deprived of his property by the same judgment. In all other instances it is no payment," and a number of authorities referred to supporting that position. "And hence," he adds, "until further enlightened, I prefer to leave this point." The question has not been decided—is an open one, and so expressly stated to be in that case, and I can not but think it strange, that under the circumstances, it should have been held that the Court so decided.

The question, then, occurs, what is the effect of a dismissal of a levy of personal property, the property being left in the possession of the defendant, as to junior judgment creditors? Does it displace the lien of a senior *fi. fa.* to that of junior judgments? For that is the question in this case. So far as this particular case is concerned, it is unnecessary for us to decide the question, for the levy dismissed was the same property that was subsequently sold, and the proceeds of which formed the subject of controversy. That accounts for, and explains the first levy; that shows that the levy had

not been productive, and it shows, too, that nobody had been injured by the dismissal of the levy. But as the question has been fairly made and discussed, and is one of constant recurrence in the Courts, we have felt it to be our duty to decide and end the question. And we hold, upon the authority of the cases referred to in *Marshall vs. Morris*, 13 *Ga.*, 185, that a dismisal of a levy on a senior *fi. fa.*, leaving the property in the possession of the defendant, is not a satisfaction of a judgment ; that it does not displace the lien of such execution or judgment, to that of junior liens ; but that the fact that the levy is dismissed and the property left in the possession of the defendant, sufficiently accounts for and explains such levy, so as to enable the plaintiff to enforce his lien by levy, in claiming money in Court, according to its priority, as effectually as though such levy had been made. And why should not this be so upon reason and principle ? If the property is left in the possession of the debtor, if his possession continues, he is not injured and loses nothing, and *he* cannot complain. If there be other judgment creditors having liens, their right to levy and force the property to sale is not effected thereby, and if they choose to force the property into market, to bring it to a sale, let them do so with their own liens. How are they injured ? All the property is still there, as accessible to them and their process as it was to the older lien. If they have no lien and the property is subsequently removed by the debtor, that is his act, and not that of the creditor, nor is he or his lien to be affect by it. Of course, any fraudulent use of the prior lien between the creditor and debtor, by which other creditors were injured, would make a difference ; but that must appear, and, of course, this decision does not affect the rights of sureties, under such circumstances, for they stand on a very different footing.

That there may be found adjudications conflicting with this, we do not doubt ; for all other Courts are governed by their own practice and the policy of the people for whom they are held. It is not the policy of the people of Georgia, that an execution should be pressed upon an unfortunate and embarrassed debtor, to its immediate satisfaction, and possibly his immediate ruin, but it has always been the policy of this State to encourage judgment creditors in the indulgence of, and forbearance with their judgment debtors ; for they have

passed laws, that these final processes may be transferred, that the judgment need not be renewed from year to year, but that it shall remain open and in full force until satisfied by the payment of the money ; and were we to decide that a levy once made must be disposed of by sale, let the consequences be what they may, either as to debtor or creditor, or the creditor would have his lien displaced, or his judgment satisfied without getting a dollar of his money, we would be going back to the dark ages that adjudged every debtor to be a criminal, and that the creditors must force a payment at once, or his lien was gone.

Judgment reversed.