57 235
95 751

ELIZABETH BOOHER, plaintiff in error, *vs.* EDMUND H. WORRILL, defendant in error.

1. Transactions between husband and wife, to the prejudice of his creditors, are to be scanned closely, and their *bona fides* must be clearly established.

2. A conveyance by husband to wife, made pending suit against him, and only a few days before the rendition of judgment, and leaving him nothing out of which payment of the judgment can be coerced, is, *prima facie*, fraudulent.

3. Where such conveyance purports to be for value, and the consideration set up is a debt from him to her, the actual existence of the debt must be shown; and this is not done by proving that she owned certain real estate, and that at the time of executing the conveyance there was an accounting for rents, she claiming and he admitting that the rents of her property had

been collected by him and not paid over, but the actual truth of such claim and admission not being in any way proven on the trial.

4. The charge need not be scrutinized if the verdict is clearly right.

5. Mistake of a witness is immaterial where its correction ought to make no difference in the result.

Debtor and creditor. Husband and wife. Fraud. New trial. Before Judge CRAWFORD. Muscogee Superior Court. November Term, 1875.

On May 31st, 1872, Worrill recovered a judgment against David L. Booher and Milo Booher, on a note dated September 30th, 1868, and due at two years, for $2,000 00. The execution based upon this judgment was levied upon an undivided half-interest in a certain part of lot one hundred and seventy, as the property of D. L. Booher. A claim thereto was interposed by Elizabeth Booher. Upon the issue thus formed, the evidence made, in brief, this case:

Until May 21st, 1872, the title to the property levied on was in David L. Booher. On that day, his wife, the claimant, presented an account for $6,000 00 for rents of her property, which she alleged had been collected by him and not paid over. Thereupon he conveyed to her the property in dispute, subject to a mortgage in favor of Robert W. Burdell, for $3,500 00, and a judgment in favor of Alfred J. Young, for about $700 00, at a valuation of $3,000 00, and the aforesaid account was credited accordingly. It was further agreed that if Booher should pay off the aforesaid mortgage and judgment, then said conveyance should be taken by his wife in full settlement of her claim for rents misappropriated. This conveyance stripped Booher of the last of his property. The object of the mortgage to Burdell was to raise money with which to pay off the debt to Worrill. Burdell, upon being thus secured, indorsed Booher's note for $3,500 00, to fall due one year thereafter. The note and mortgage were made November 25th, 1871. The latter tried to discount this paper, but failed. He twice offered it to Worrill's attorney, upon condition that indulgence should be granted for

two years, but it was refused. The note was then returned and the mortgage canceled. The Young judgment was paid off, thus leaving, as insisted by claimant, an unencumbered title to the property in dispute in her.

On August 25th, 1869, Booher conveyed to claimant, in consideration of natural love and affection, his residence and lot and store-house, occupied by F. W. Andrews. In 1870, he sold a lot and store-house to one Illges, for $7,000 00 in cash.

The account for rents collected and not paid over to her, presented by claimant, was as follows :

" Received rent of store 141, for 18 months, at $66 00 per month:$1,200 00
　　"　　"　　"　 117, " ". 　"　 "`$100 00 " 　"　 1,800 00
　　"　　for dwelling house. from N. J. Bussey. . . . . . . 600 00
　　"　　previous to the above from Harrison, A. L.,for store 117 2,400 00
　　　　　　　　　　　　　　　　　　　　　　　　　　$6,000 00."

In 1871, Booher, as trustee, paid city tax on property valued at $17,500 00; in 1872, on property valued at $18,000 00.

N. J. Bussey testified that he occupied the house known as the residence of D. L. Booher in the year 1869.

The jury found the property subject. The claimant moved for a new trial because of error in the charge of the court, not material here; because of mistake in the evidence of Bussey, and because the verdict was contrary to the evidence.

In support of the second ground, the statement of the witness alluded to was read, on the hearing of the motion for a new trial, to the effect that, upon examination he had ascertained that he lived on the Booher place from October, 1869, to October, 1870. Also, the affidavit of claimant's attorney to the effect that this mistake was used most deleteriously to his client's case in the argument before the jury, in this, that the account for rents misappropriated, presented by claimant against her husband, and by which they settled, contained an item for rent of dwelling-house collected from Bussey, $600, whilst the evidence showed that the latter had only occupied the house six weeks after the title was conveyed to claimant.

The motion was overruled and claimant excepted.

Booher *vs.* Worrill.

R. J. MOSES, for plaintiff in error.

PEABODY & BRANNON; BLANDFORD & GARRARD, for defendant.

BLECKLEY, Judge.

1. Where man and wife are acting together, on the same side of a question of property, they are under temptation to do themselves more than justice. What is secured to the one is apt to be shared by the other. With respect to enjoyment, however it may be as to title, neither is a stranger to the other's fortune. Contracts between them which retain in the family property that would otherwise go to satisfy honest creditors, are to be subjected to strict scrutiny—a vigilant judicial police. When a creditor challenges such a contract for fraud, slight evidence will change the *onus*, and cast on the conjugal pair the duty of manifesting the genuineness and good faith of the transaction by such evidence as will satisfy, or ought to satisfy, an honest jury.

2. Here we have a conveyance made by the husband to his wife, pending the creditor's suit, and only ten days before judgment. The property conveyed was worth several thousand dollars, and the evidence indicates that it was all the debtor had left. He stripped himself of the last and only means of making voluntary payment; and if the conveyance were to stand, a coercive collection of the debt would, doubtless, be impossible. With these *indicia* of fraud, there is a *prima facie* case, and the burden of meeting and explaining it is upon the claimant.

3. And what is the explanation offered? Chiefly the acts and declarations of the parties themselves at the time of the transaction which stands impeached. The deed purports to have been made for a valuable consideration. The wife had real estate capable of yielding rent. She made a large claim upon her husband for rents collected and not paid over. He admitted that the claim was just. An account was made

Booher *vs.* Worrill.

out and receipted, and the deed was executed and delivered. By special contract, reduced to writing, the deed was to be in part payment of the account if the property should not be disencumbered by the husband, and in full payment if it were disencumbered. The main encumbrance treated about, was a mortgage intended to be used to raise money to pay off this creditor, but which was not so used, the effort to do so proving fruitless. And, thereupon, the mortgage itself was offered to the creditor, on condition that he would grant indulgence for two years. These terms being rejected, the mortgage was allowed to drop and go for nothing, and thus the wife's title was made good, and the creditor left wholly unprovided for. Now, to put bottom in all this, the actual existence of a debt for rents collected by the husband for the wife, and not paid over, is indispensable. Yet, no witness testifies to the collection of a single dollar. The whole matter stands on what the parties themselves said and did. The wife claimed—the husband admitted—the account was made out and receipted—the deed was made and delivered. If the husband had, in fact, made collections of rents, to the amount of thousands of dollars, this must have been susceptible of proof. Those who paid the money could have been called to testify, and even the parties themselves were competent witnesses. But no attempt was made to establish any payment to the husband; no witness was examined on the subject, and no excuse was given why witnesses were not produced, not even why the claimant or her husband was not interrogated. The debt was wholly unproved; and its real existence was the vital question, as was ruled in this same case, at July term, 1875, 55 *Georgia Reports,* 332.

2. To scrutinize the charge of the court complained of would be fruitless. Whether the charge was correct or not, the case could have had no other right result, on the evidence before the jury, than the one arrived at.

3. Equally immaterial is it whether the witness, Dr. Bussey, made a mistake in his evidence or not. The proposed correction of the mistake would still leave the radical infirmity

of the claimant's case unremedied.  There was no effort to prove by Dr. Bussey that he ever paid any rent to the claimant's husband, and it is not shown that he intended to testify to that fact on the trial, or that he would or could testify to it now.  Besides, even a clearly material mistake by a witness seems not to be a favored ground for new trial: 25 *Georgia Reports*, 182; 37 *Ibid.*, 48; 15 *Ibid.*, 550; 54 *Ibid.*, 635; *Josey vs. Stapleton*, July term, 1876.

Judgment affirmed.