### REESE *v.* SHELL.

The evidence in this case does not support the verdict.   Giving to
  that which was introduced for the claimant its most favorable in-
  terpretation in her behalf, it is impossible to escape the conclu-
  sion that the conveyance to her was the result of a purpose on the
  part of her husband and herself to defraud his creditors; and con-
  sequently the jury were not warranted in finding the property not
  subject to the plaintiff's execution.

April 8, 1895.   By two Justices.   Brought forward from the last term.

Levy and claim. Before Judge JANES. Haralson superior court. January term, 1894.

ADAMSON & JACKSON, HEAD & HEAD and OSCAR REESE, for plaintiff.

SIMMONS, Chief Justice,

Shell bought a house and lot from Head for $750, paying part of the purchase money and taking from Head a bond for title to the premises. After he had been in possession of the property for a considerable length of time and had paid all of the purchase money except about $125, he married, and having paid the remainder of the purchase money, caused a deed to the property to be made by Head to his wife, the consideration expressed in the deed being $700. Shell was then insolvent. He continued in possession of the property in his own right until after suit had been brought and until within a few days before judgment was rendered against him upon a debt which he had contracted prior to the making of the deed. An execution founded on this judgment was levied upon the property, and a claim was interposed by his wife. In addition to the facts above recited, it appeared in evidence on the trial of the claim case that at the time the conveyance was made, Shell told the vendor to keep quiet about it; and the deed was withheld from record until after the judgment in question had been rendered. The claimant's testimony as to why the deed was made to her was contradictory. When first introduced as a witness, she testified that her husband had the title conveyed to her as security for money she had loaned him to finish paying for the property, amounting to about $125; but she subsequently took the stand again, and testified that the transaction was not a loan and the deed was not intended to secure her for the money advanced, but that she had purchased the premises from her husband and the deed

was for an absolute sale. The husband testified that the market value of the property was between $500 and $600, and the original vendor that it was worth $750, the price he had been paid for it.

The evidence did not warrant a verdict in favor of the claimant. Transactions between husband and wife to the prejudice of the husband's creditors are to be scanned closely, and their *bona fides* must be clearly established. In this case the badges of fraud are numerous, and there can be no question that in having the deed made to his wife the husband was perpetrating a fraud upon his creditors. It was not denied that he was then insolvent, and according to his own statement the property was worth several times the amount claimed to have been advanced by his wife. The wife, though she claimed to be ignorant of the value of the land, knew that the money advanced by her was merely a part of the price paid to the original vendor, and that the conveyance was to a large extent voluntary. The burden was upon her to show clearly that she acted in good faith, and that she was not only ignorant of, but had no grounds for reasonable suspicion as to, the husband's fraudulent intent. We think she failed to do this. Taking all the evidence into consideration, we cannot escape the conclusion that the conveyance to the wife was the result of a common intent on the part of both husband and wife to defeat his creditors. A new trial should be granted, and it is so ordered. See Code, §1952, and citations; *Kelly* v. *Simmons*, 73 *Ga.* 716; *Booher* v. *Worrill*, 57 *Ga.* 235; *Brown* v. *Houser*, 61 *Ga.* 631.　　　　　　　　　　　　*Judgment reversed.*