### GRAY, trustee, *v.* COLLINS *et al.*

1. The evidence examined and held to have made issues that should have been submitted to a jury.

(a) Where a transaction between a husband and wife is attacked for fraud by the creditors of the husband, the onus is on the husband and wife to show that the transaction was fair.

2. Matters which are defensive to the plaintiff's action may be averred in amendment to the answer, even though such matters may be insufficient to afford the affirmative equitable relief therein prayed.

3. Where a wife executes to her· husband a deed to her land under the belief that she is giving a security deed to another to procure money, for her own benefit, and this deed is not recorded until after credit is extended to the husband, in the absence of evidence that the credit was extended on the husband's ostensible ownership of the land it is competent for the wife to show that the deed to her husband was procured by imposition.

APRIL 18, 1913.

Equitable petition. Before Judge Worrill. Early superior court. July 13, 1912.

*Rambo & Wright* and *Charles L. Glessner,* for plaintiff.
*Pope & Bennet, W. G. Park,* and *B. R. Collins,* for defendants.

EVANS, P. J. The trustee in bankruptcy of the estate of E. S. Collins brought a petition against the bankrupt, his wife Mrs. Emma T. Collins, and his son B. R. Collins, praying for the can-

cellation of certain deeds, and a decree that the title to the land therein described is in the bankrupt as against his creditors whose debts were in existence at the time the conveyance from the bankrupt to his son was executed, to wit, October 14th, 1908. On the trial it appeared that Mrs. Emma T. Collins was the owner of a tract of land which she conveyed, on November 30, 1901, to her husband by warranty deed upon an alleged consideration of $500. This deed was not recorded until October 14, 1904. In July, 1903, between the execution and record of the deed, E. S. Collins purchased certain cotton-gin machinery from the Liddell Company, giving his notes therefor, reciting that they were given for the purchase of the machinery, with reservation of title in the vendor until the full payment of the purchase-price. Suit was brought on these notes on June 23, 1908, and judgment was obtained on October 9, 1909. On December 20, 1906, E. S. Collins conveyed the land by warranty deed to his wife, reciting a consideration of love and affection; and this deed was recorded on January 17, 1907. Mrs. Collins, on December 26, 1906, conveyed the land, by warranty deed, reciting a consideration of love and affection, to her son B. R. Collins, who on the same day conveyed the land to his father, E. S. Collins, by deed reciting a consideration of love and affection. Both of these deeds were recorded on December 28, 1906. On October 14, 1908, E. S. Collins conveyed the land to B. R. Collins, who on the same day conveyed to Emma T. Collins; both deeds reciting a consideration of love and affection, and both being recorded December 14, 1908. E. S. Collins was adjudged a bankrupt, on his voluntary petition, in December, 1909, and has not been discharged. The plaintiff is his duly appointed trustee. Mrs. Emma T. Collins testified by interrogatories, and subsequently by deposition. In her first testimony she said, that she went into possession of the land soon after she purchased it; that her husband looked after it for her; and that she became indebted to the Bank of Blakely through D. W. James. She had no recollection of having executed any papers to James, but she signed a paper to the Bank of Blakely. She did not recall making a deed to her husband in 1901; her husband never paid or promised to pay to her any money for the land, nor did she expect him to pay for the land. She knew her husband bought the gin outfit from the Liddell Company, and at that time he owned no land, but he did

own some personal property of small value. She did not execute a deed to her son; that is, she did not know that she did. She signed some papers without looking over them. Having confidence in her husband, she signed some paper at his request, thinking it was a mortgage. Her husband represented that the purpose of signing the papers which she executed was to get money with which to pay D. W. James, and she signed the paper without reading it. It was not until after the institution of the present suit that she knew that she had made a deed to her son and that he in turn had conveyed the land to her husband. It was not her purpose to make a deed of gift to her son, so that he could make a similar deed to her husband, and, if such deeds be construed to be gifts, she desired to revoke them. In the signing of these deeds she had absolute confidence in her husband; was under his influence in matters of this kind, and signed the deeds because he told her to sign them. In her deposition she testified that since her testimony was taken by interrogatories she had been informed by her husband that she did execute the deed of November 30, 1901; but she deposed that no consideration passed from him to her. Her husband always managed her property; she has from time to time executed mortgages at his request to meet expenses incurred for her when he operated her farm; she had absolute confidence in him, and implicitly relied on his judgment, honor, and integrity to make the necessary financial arrangements for her farming operations; at his instance and request she signed the deed of November 30, 1901, believing at the time, because he "requested" [represented?] to her, that it was a mortgage to borrow money for the purpose of paying expenses and operating her farm for the year 1902 as well as to pay her past-due obligations; she did not execute the deed so as to permit him to embark in business and secure credit from third persons; after his retirement from business in 1887, he looked after her farm, and did not operate any business of his own until he began the ginning business in 1904; he has never obtained any credit on her land with her consent or knowledge; she was not advised or informed of the execution of the deed from him to herself in 1906, and has never seen it, and first heard of its existence since this suit was brought.

B. R. Collins testified: He is an attorney at law, and had charge of the transaction to secure a loan from the Southern Mortgage

Company. He represented the company in connection with another attorney in the matter of securing loans. There was a past-due indebtedness of his mother to the Bank of Blakely. In the negotiation of the loan it was necessary for her to sign the papers before an officer with a seal, which would necessitate her coming to Blakely at different times. He conferred with his associate, who was a more experienced attorney, and he suggested the course which was pursued, viz., to have his mother make a deed to him, and he in turn make a deed to his father, who would negotiate the loan in his own name, and, after the loan was negotiated, his father could reconvey the land to him and he to his mother, and thereby revest her with the title without impairing her title to the land. This suggestion was acted on; and this is the reason for the execution of the deeds made in 1906 and 1908. The witness knew nothing of the deed dated in 1901 until the deed of his father reconveying the land to her was made. The main purpose of the whole transaction was to get the loan for his mother without the necessity of her being inconvenienced in making trips to sign the different papers before an officer with a seal; he did not intentionally perpetrate a fraud on his mother in procuring the deeds, but if he misrepresented matters to her, it was because he was under the wrong impression by reason of his associate counsel's advising him at the time how to fix up the papers; and if he said anything further at all than what his associate counsel had advised, he did misrepresent it to her. He made no wilful or fraudulent misrepresentation, but acted in good faith. The deeds are in his father's handwriting; his father was advised of the plan suggested by his associate counsel, who was representing the Liddell Company at the time; and the witness told the circumstances to his mother. He explained to his associate counsel that it would be a serious disadvantage to his mother to come to Blakely to sign the various papers pertaining to the negotiation of the loan, and his associate counsel said, "Well, secure the loan in your father's name; have the title put into him. I think when he comes in I can fix the deed." He told his associate counsel that his mother had already conveyed the land to his father. The associate counsel replied "That is no good," and advised the reconveyance of the land to his mother and the other conveyance referred to.

E. S. Collins testified that he never misrepresented to the Liddell

Company or any one else that he owned the land. About the time that his wife executed the deed of 1901 he told her she would have to give the land as security for a loan from the Bank of Blakely, but when she signed the deed he did not tell her whether it was a deed or mortgage, though she thought it was a mortgage. He undertook to secure a loan from Mr. Weathers, and turned the deed over to him, who had it put on record.

On this evidence a verdict was directed for the defendants.

1. We think the court should have submitted the issues to the jury. At the time the debt of the Liddell Company was contracted by E. S. Collins, the paper title to the land was in him. On December 20, 1906, he reconveyed the land to his wife, who six days later conveyed it to her son, who on the same day conveyed it to the bankrupt. About two years thereafter, and while the suit of the Liddell Company was pending against him, E. S. Collins conveyed the land to his son, who in turn conveyed it to his mother. The defendants in their testimony undertake to explain these transactions. It is not contended that any of these deeds were executed upon a valuable consideration. The deed of 1901 was alleged to have been procured by imposition, and the deeds of later date are alleged to have been executed so as to save Mrs. Collins the inconvenience of making various trips in the negotiation of a loan on the land, which was procured by her husband for her benefit. At the time of the execution of the first deed her husband was possessed of but little property, and was being sued by the Liddell Company when the later deeds were executed. The insolvency of the defendant E. S. Collins at the time of these later conveyances was fairly inferable from the evidence. The deeds purport on their faces to be gifts from the grantor to the grantee. It was for the jury to say whether these deeds were made for the purpose of delaying or defeating the bankrupt's creditors, or as contended by the defendants. *Blackburn* v. *Lee,* 137 *Ga.* 265 (73 S. E. 1). The parties to the transactions are husband, wife, and son. A wife may give property to her husband. She may also contract with him; but when a transaction between husband and wife is attacked for fraud by the creditors of either, the onus is on the husband and wife to show that the transaction was fair. Civil Code, § 3011. Transactions between husband and wife and near relatives, to the prejudice of creditors, are to be closely

scanned and their bona fides clearly established. *Booher* v. *Worrill*, *57 Ga.* 235; *Smith* v. *Wellborn*, *75 Ga.* 799. It was therefore erroneous for the court to direct a verdict.

2. Mrs. Collins was allowed to amend her plea by alleging the circumstances attending the execution of the various deeds as testified to by her, and praying for their cancellation. It was urged that no sufficient cause for the cancellation of the deeds was averred. Even if it be admitted that the matters pleaded were insufficient for the affirmative relief prayed by her, still they were relevant as explaining the various transactions relied on by the plaintiff as constituting fraudulent transfers of the debtor's property.

3. With respect to the deed from Mrs. Collins to her husband, executed in 1901, which was not recorded until after the debt to the creditor was created, in the absence of testimony authorizing an inference that credit was extended on the faith of the husband's ostensible ownership it was competent to show that it was without consideration, and executed under circumstances negativing any intention to put the title in the husband. If the creditor did not extend credit to the husband on the faith of his ostensible ownership of the land, he can not object to the assertion of the wife's equity in the land. *Judgment reversed. All the Justices concur.*