24024.   STROBEL *v.* GORMLEY, superintendent of banks.

Decided January 11, 1935.

W. H. *Titus,* for plaintiff in error. *Alexander & Jones,* contra.

MacIntyre, J. "R. E. Gormley, superintendent of banks for the State of Georgia, in charge and possession of Bank of Thomasville, in liquidation," procured a judgment for $2,541.59 against F. A. Strobel. The execution issued on this judgment was levied on certain personal property as the property of the defendant. Mrs. Modena Strobel, wife of F. A. Strobel, filed her claim to said property, and upon the trial of the claim case on January 30, 1934, before the court without the intervention of a jury, the property was found subject to the levy. The claimant's motion for a new trial was overruled, and she excepted. It appearing from the entry of levy on the execution that the property levied on was found in the possession of the defendant in fi. fa., the claimant assumed the burden of proof. We quote from the brief of evidence as follows: "The claimant introduced the following documentary evidence: Bill of sale covering the property now in question, from Frank A. Strobel, defendant in fi. fa., to Mrs. Modena Strobel, claimant, dated 17th day of February, 1932, and recorded in office of clerk of the superior court, Thomas county, Georgia, on 29th of February, 1932. Also execution issued from Thomas superior court on the 21st of October, 1932, in favor of Ethel Dekle Strobel, and against the defendant in fi. fa., Frank A. Strobel, together with the sheriff's entry of levy thereon covering the same personal property now in question; also certified copy of the claim affidavit and bond filed in Thomas superior court on the 28th of November,

1932, in which Mrs. Modena Strobel, the claimant in this case, claimed the property levied on under the above execution, and the verdict rendered on the trial of said claim case, as follows: "We, the jury, find the property subject to levy, and that the levy proceed. This 17th day of April, 1933."

The brief of evidence recites that the plaintiff in execution introduced the following documentary evidence: 1. "Fi. fa. issued against F. A. Strobel in favor of R. E. Gormley, superintendent of banks for the State of Georgia, in charge of Bank of Thomasville, in liquidation, on the 29th day of September, 1932, together with the entry of levy of the sheriff thereon and all other entries." 2. "Tax returns of F. A. Strobel in Thomas county, Georgia, for years 1930 and 1931, said tax returns showing that the property, or part of the property in question, was returned by F. A. Strobel in Thomas county, Georgia, for taxation, and not returned by Mrs. F. A. Strobel." 3. "Application of Mrs. Modena Strobel for homestead setting aside sixteen hundred dollars worth of property to Mrs. Modena Strobel, which said application alleges that F. A. Strobel refuses and declines to make application for homestead; also the schedule of property set aside in the homestead, a list of the creditors, and the order of the ordinary approving same." 4. "The two notes on which judgment was obtained, and upon which the fi. fa. as levied in this case was issued, as follows: One note dated January 18th, 1932, due April 18th, 1932, for the principal sum of $595, and the second note, dated December 15th, 1931, due March 2d, 1931, for the principal sum of $1,585, both of which notes bear the following clauses: And for the further consideration of $1 to me in hand paid, and for the purpose of securing the payment of this note, I hereby transfer, assign, and convey to the owner of this note so much of my homestead and exemption as will pay this note in full ' . . , and I hereby direct the trustee in bankruptcy to deliver to the owner of said note a sufficient amount of property or money claimed or set apart as exempt, to pay off this indebtedness, and this shall be his authority therefor. I hereby waive and renounce for myself and family all homestead and exemption rights I or they may have under the constitution and laws of this State, or any other State of the United States, including the waiver of exemption allowed in the United States bankruptcy laws, as against this debt or the renewal thereof."

The brief of evidence recites: "On 20th day of May, 1933, certain personal property of said F. A. Strobel was levied upon under and by virtue of the said fi. fa., and on the 3rd day of June, 1933, the said levy and entry of levy was dismissed by the plaintiff in execution, the said entry of dismissal being: 'The within levy is this day dismissed by plaintiff in execution, this 3rd day of June, 1933. Alexander & Jones, by Randolph A. Jones, attorneys for plaintiff in execution.'"

Randolph A. Jones, of counsel for the plaintiff in execution, testified as follows: "The said levy was dismissed because there was no affidavit filed that the property was subject to levy, the said F. A. Strobel having on the 17th day of May made application to R. S. Burch, ordinary of Thomas county, Georgia, for a homestead on said property, and said application having been granted on the 17th day of May, 1933. For this reason it was necessary, or we deemed it advisable, to file an affidavit stating that the property levied upon was subject to levy. Therefore it was necessary to dismiss the first levy, and file an affidavit and relevy on said property. I instructed the sheriff that the levy was being dismissed for the sole purpose of making another levy, and requested that he make another levy on the same property. Another levy was made, as shown on the fi. fa., but between the time the first levy was made there was considerable property disposed of by the defendant in execution, and for this reason the second entry of levy is somewhat different from the first entry of levy. There was no money obtained under the first levy, and no advantage was obtained by the plaintiff in execution. The property was left in the possession of F. A. Strobel, and there was no harm done whatever to F. A. Strobel by the dismissal referred to."

Sheriff G. E. Davis, sworn for the plaintiff in execution, testified: "Mr. Jones instructed me at the time that they were dismissing the levy for the purpose of filing an affidavit, and that we would then relevy on said property. Mr. Jones told me then that I would have to go to Strobel's office and make another levy. Yes, I did make a second levy. After making the first levy the property was left in Mr. Strobel's possession, and it has been left in his possession since the second levy. It has been in his possession at all times since the first and second levies. Mr. Strobel had a Chrysler automobile when I made the first levy. He did not have it when

I made the second levy." On cross-examination, sheriff Davis testified: "At the time I made this first levy I left the property in Strobel's office in his care and charge. I did not move it. . . I made him custodian of the property. I did not require him to give bond when I made the second levy. He could have done that at his own leisure. I do not know whether he gave bond or not. The Chrysler automobile . . was disposed of between the first and second levies. In other words, at the time the car was disposed of there was no levy on it, only the first levy."

The brief of evidence recites that: "On the 29th day of September, 1932, judgment was obtained on said notes for the sum of $2,541.59, and execution issued on said debt against F. A. Strobel and in favor of R. E. Gormley, superintendent of banks for the State of Georgia."

The first special ground of the motion for a new trial avers that the court erred in admitting in evidence the "fi. fa. issued against F. A. Strobel in favor of R. E. Gormley, superintendent of banks for the State of Georgia, in charge and possession of the Bank of Thomasville, in liquidation, on the 29th day of September, 1932, together with the entry of levy of the sheriff thereon and all other levies." The ground continues: "Movant objected to the admission of such evidence at the time the same was offered, and did then and there urge the following grounds of objection thereto, to wit: Because the said fi. fa. as offered in evidence contained an entry of levy upon the same property now in question, and said entry of levy was subsequently dismissed by attorneys for plaintiff in fi. fa. with the following entry: "The within levy is this day dismissed by plaintiff in execution. This 3rd day of June, 1933. Alexander & Jones, by Randolph A. Jones, attorneys for plaintiff in execution." "Movant objected to the admission of such evidence upon the ground that the dismissal of said levy upon personal property without any explanation thereof by the plaintiff in execution amounted to a satisfaction of the debt so far as the claimant, a third party, might be affected by it."

The Civil Code (1910), § 6047, reads: "A levy upon personal property sufficient to pay the debt, unaccounted for, is prima facie evidence of satisfaction to the extent of the value of the property, and the dismissal of such levy, unexplained, is an abandonment of the lien so far as third parties are concerned." After discussing,

explaining, and differentiating the two cases relied upon by counsel for the claimant (*Curan* v. *Colbert*, 3 *Ga.* 239 (46 Am. D. 427), and *Newsom* v. *McLendon*, 6 *Ga.* 392), the Supreme Court, in *Ryan* v. *Lieber*, 30 *Ga.* 433, 438, said: "The question, then, occurs, what is the effect of a dismissal of a levy of personal property, the property being left in the possession of the defendant, as to junior judgment creditors? Does it displace the lien of a senior fi. fa. to that of junior judgments? . . And we hold, upon the authority of the cases referred to in *Marshall* v. *Morris*, 13 *Ga.* 158, that a dismissal of a levy on a senior fi. fa., leaving the property in the possession of the defendant, is not a satisfaction of the judgment; that it does not displace the lien of such execution or judgment, to that of junior liens; but that the fact that the levy is dismissed and the property left in the possession of the defendant sufficiently accounts for, and explains such levy, so as to enable the plaintiff to enforce his lien by levy, in claiming money in court, according to its priority, as effectually as though no such levy had been made. And why should this not be so upon reason and principle? If the property is left in the possession of the debtor, if his possession continues, he is not injured and loses nothing, and *he* can not complain. If there be other judgment creditors having liens, their right to levy and force the property to sale is not affected thereby, and if they choose to force the property into market, to bring it to a sale, let them do so with their own liens. How are they injured? All the property is still there, as accessible to them and their process as it was to the older lien. If they have no lien and the property is subsequently removed by the debtor, that is his act, and not that of the creditor, nor is he or his lien to be affected by it." The second headnote of the *Ryan* case reads: "A levy of personal property which has been dismissed by plaintiff or plaintiff's attorney, without being productive, and when no injury has resulted from such dismissal, sufficiently accounts for and explains such levy to authorize plaintiff to proceed with its collection, and to enable it to participate in the distribution of a fund in court raised from the sale of the defendant's property according to its priority." In *Rawson* v. *Davis*, 36 *Ga.* 511, where there was likewise a contest between the holder of a senior judgment and certain junior judgments for a fund in court, it appeared that the execution based upon the senior judgment was levied on

"property sufficient to satisfy the same," and that the defendant paid a part of the money due on the execution and the levy was "dismissed by order of the plaintiffs *without a sale of the property.*" The trial judge held that the junior judgments should take the money in preference to the senior judgment, and the Supreme Court reversed the judgment. After quoting the language of the Civil Code (1910), § 6047, supra, the court said: "The levy made on the defendant's property is accounted for; it was dismissed by order of the plaintiffs *without a sale thereof.* The dismissal of the levy on the execution is also accounted for, or rather *explained,* so far as to show that it was not satisfied out of the defendant's property. When a levy has been made on the defendant's property and dismissed, it must be shown that the execution was *not satisfied thereby;* for if it is *unexplained,* it will be considered as an abandonment of the lien, so far as third parties are concerned. In this case it was explained, and shown that the execution was not paid off or satisfied, either by the *money* or *property* of the defendant. A levy upon property, or the dismissal of a levy may be accounted for or explained, as any other facts may be explained. The question in such cases to be settled is, whether the execution has in fact been satisfied, either by the money of the defendant or his property. In the absence of proof to the contrary, the legal presumption is that it has, when the levy is not *accounted for,* or the dismissal of the levy is not *explained;* but like any other legal presumption, it may be rebutted by the *facts of the case.*" That decision cites the *Ryan* case, supra, and holds that it is "a fair and *practical* exposition of the rule applicable to such cases." The first headnote of *Morgan* v. *Taylor,* 55 *Ga.* 224, a claim case, reads: "A levy on sufficient personal property to satisfy the execution, undisposed of on the face thereof, is no legal ground for withholding the execution from the jury, if it be shown, *aliunde,* to the satisfaction of the presiding judge, that such levy was unproductive and without injury to the defendant." See also the recent case of *Hope* v. *Underwood,* 37 *Ga. App.* 139 (2). In connection with this ground, we call attention to the testimony of the witnesses Jones and Davis, hereinbefore set out. Under the authorities cited we hold that the levy was accounted for and its dismissal explained, and that the execution was properly admitted in evidence.

It is averred in the second special ground of the motion for a new trial that the court erred in admitting the tax-returns of F. A. Strobel for the years 1930 and 1931. The objection was that these returns were irrelevant and illustrated no issue in the case, because "the bill of sale on which claimant relied was executed on the 17th day of February, 1932, and . . there was no dispute as to title to the property in question during the years 1930 and 1931." The plaintiff in execution levied on the property as that of the defendant, and the claimant claimed title from the defendant. In these circumstances, we fail to discern how either of them was injured by the introduction of the tax-returns; and we decline to reverse the judgment because of their admission.

In the third special ground it is averred that the court erred in admitting in evidence the "application of Mrs. Modena Strobel for homestead setting aside sixteen hundred dollars worth of property to Mrs. Modena Strobel, which said application alleges that F. A. Strobel refuses and declines to make application for homestead, a list of creditors, and the order of the ordinary approving same." The objection was that the evidence was irrelevant and immaterial, and "movant's claim was filed and based upon the bill of sale already in evidence, and not upon the homestead." We think that the fact that Mrs. Modena Strobel procured a homestead "on the property in question" more than a year after her husband had made her a bill of sale to the same property is material upon the question of the bona fides of the sale, and we hold that the evidence was admissible.

It appears from the fourth special ground that the claimant interposed the following objection to the introduction in evidence of the two notes upon which judgment was procured and execution issued in the main case: "Movant objected to the admission of such evidence upon the ground that the said notes contained provisions relative to proceedings in bankruptcy cases which were entirely irrelevant, and that even though the judgment and execution in the instant case were based upon the notes, the transfer and assignment contained in said notes of defendant's homestead and exemption did not and could not convey to plaintiff any title to a homestead not then in existence, it not being shown at the time said notes were executed that defendant was in fact entitled to any benefits under the homestead and the exemption laws of this State,

nor of any other State, nor of the United States. Movant objected
to the admission of said notes on the further ground that the claim
in this case was based upon the bill of sale already in evidence, and
not upon the homestead." We are satisfied that the notes were
admissible in evidence over the objections interposed, and hold
that there is no merit in this ground.

The last special ground avers that the court erred in admitting
the testimony of Randolph A. Jones (hereinbefore set out) de-
signed to explain the levy, the dismissal thereof, and the relevy.
"A levy upon property, or the dismissal of a levy, may be accounted
for or explained, as any other facts may be explained." *Rawson* v.
*Davis,* supra. Waiving the fact that the objection was to "all
of the testimony" of Jones and some of it is unquestionably admis-
sible, we hold that it was admissible to account for the levy and
explain its dismissal.

We shall now consider the general grounds of the motion for a
new trial. In his brief, counsel for plaintiff in error states that
"the claimant . . based her claim on the bill of sale, and not
upon the homestead." Aside from this statement, however, it
would appear that, in view of the waiver of homestead in the notes
declared upon, and upon which the judgment and execution in the
main case were based, the homestead subsequently granted was not
good against the execution of plaintiff in execution. See *Hughey*
v. *Peacock,* 115 *Ga.* 735 (42 S. E. 44). Certainly, by his evidence,
the plaintiff in execution attacked the bona fides of the bill of sale
upon which the claimant relies. In the case of *Booher* v. *Worrill,*
57 *Ga.* 235, 238, Judge Bleckley, speaking for the court, said:
"Where man and wife are acting together, on the same side of a
question of property, they are under temptation to do themselves
more than justice. What is secured to the one is apt to be shared
by the other. . . Contracts between them which retain in the
family property that would otherwise go to satisfy honest creditors,
are to be subjected to strict scrutiny—a vigilant judicial police.
When a creditor challenges such a contract for fraud, slight evi-
dence will change the onus, and cast on the conjugal pair the duty
of manifesting the genuineness and good faith of the transaction
by such evidence as will satisfy, or ought to satisfy, an honest jury."
In the case of *Gill* v. *Willingham,* 156 *Ga.* 728 (120 S. E. 108),
where a wife claimed the property levied on under a deed from her

husband, the court instructed the jury as follows: "The claimant, in support of her claim, introduces in evidence a certain deed from M. J. Willingham to his wife . . , purporting to convey the property in dispute to the claimant . . for the alleged consideration of $1500. . . Now, gentlemen, the effect of this deed . . was to put whatever title M. J. Willingham had in the property in dispute in his wife, the claimant in this case; and nothing else appearing, why the property could not be subjected, and you should find the property not subject, nothing else appearing in the case. Now the plaintiff in fi. fa. attacks that deed and says that it is void and fraudulent in law as against the plaintiff in fi. fa., and is null and void for the reason that the defendant in fi. fa. . . was insolvent, and that he conveyed the land by the deed with intent to delay or defraud creditors and others, that such intention was known to the party taking the deed, the claimant in this case. . . So that, gentlemen, the burden would then shift to the plaintiff in fi. fa. to show that the deed . . purporting to convey the property in dispute, was null and void for the reason insisted on by the plaintiff in fi. fa." The Supreme Court said: "The plaintiff insists that this charge is an incorrect statement of the law; that when a transaction between husband and wife is attacked for fraud by a creditor, the burden is on the husband and wife to show that the transaction is fair; and that the introduction of the deed from the husband, who is the defendant in fi. fa., to the claimant, who is his wife, did not shift the burden from the claimant to the plaintiff in fi. fa., and did not overcome the prima facie presumption arising from the possession of the premises in dispute by the defendant at the date of the levy, and the assumption of the burden of proof by the claimant. *Held:* When a transaction between husband and wife is attacked for fraud by the creditors of either, the onus is on the husband and wife to show that the transaction was fair. Civil Code (1910), § 3011; *Richardson* v. *Subers,* 82 *Ga.* 427 (9 S. E. 172); *Strickland* v. *Jones,* 131 *Ga.* 409 (62 S. E. 322); *Brand* v. *Bagwell,* 133 *Ga.* 750 (66 S. E. 935); *Gray* v. *Collins,* 139 *Ga.* 776 (78 S. E. 127); *Mitchell* v. *Mixon,* 148 *Ga.* 596 (97 S. E. 528). This instruction was error, because the mere introduction of a conveyance from the husband to the wife would not shift the burden from her to the plaintiff, the burden being on her to show that the whole transac-

tion was fair (*Richardson* v. *Subers,* supra) ; and it was for the jury to say what evidence would shift the onus from the husband and wife to the creditor. *Kelley* v. *Stovall,* 138 *Ga.* 186 (75 S. E. 6) ; *Stephens* v. *Southern Cotton Oil Co.,* 147 *Ga.* 410 (94 S. E. 245) ; *Clark* v. *Cassidy,* 64 *Ga.* 662 (4)." In *Carter* v. *Stanfield,* 8 *Ga.* 49, the Supreme Court said: "On the trial of the right of property, under our Claim Laws, the possession of the defendant in execution, after an absolute sale of the property levied on, unexplained, is prima facie evidence of fraud." In that decision (p. 50) the court held: "Here, the possession was unexplained, and the jury rightly found the property subject to the execution." See *Salsbury* v. *McNure,* 30 *Ga. App.* 81 (116 S. E. 666), where it was said: "A claim case is in the nature of an equitable proceeding, and where transactions between relatives are under review, slight circumstances are often sufficient to induce belief on the part of a jury that there was fraud or collusion between the parties, and authorize them to find against the claimant and in favor of the plaintiff in fi. fa. *Bryant* v. *Dickerson,* 19 *Ga. App.* 80, 82 (90 S. E. 1027)." See *Booher* v. *Worrill,* supra.

It appears from the record in the case at bar that the property levied on (with the exception of a Chrysler automobile) was in Strobel's office. The sheriff testified: "At the time I made this first levy, I left the property in Strobel's office, in his care and charge; I did not move it." Was not the burden upon the claimant to explain the possession of the property in her husband after he had made her the bill of sale to it? We think so; and yet the record discloses no explanation whatever of such possession. It may be observed in passing that the record in this case fails to show what consideration, if any, was given by Mrs. Modena Strobel for the conveyance of the property covered by her bill of sale. Again, the record fails to explain why the claimant applied for and procured a homestead on the property in controversy long after the date and recording of her bill of sale covering it. The facts of the case, in so far as they are ascertainable from the record, have been already set out, and we see no occasion to discuss them further. "Fraud may not be presumed, but, being in itself subtle, slight circumstances may be sufficient to carry conviction of its existence." Civil Code (1910), § 4626. As has already been shown, this rule is peculiarly applicable in transactions between husband and

wife. Subsection 2 of section 3224 of the Code of 1910 reads: "Every conveyance of real or personal estate, by writing or otherwise, and every bond, suit, judgment and execution, or contract of any description, had or made with intention to delay or defraud creditors, and such intention known to the party taking. A bona fide transaction on a valuable consideration, and without notice or ground for reasonable suspicion, shall be valid." This subsection follows the main section, which reads: "The following acts by debtors shall be fraudulent in law against creditors and others, and as to them null and void." Under the facts of this case we can not say that the jury had not the right to find the property subject to the execution, and we hold that the trial judge did not err in overruling the general grounds of the motion for a new trial.

*Judgment affirmed.* *Broyles, C. J., and Guerry, J., concur.*