## BACON *v.* BACON, executor, *et al.*

1. Where the court conditionally admits evidence, reserving a final ruling upon its competency until a later stage of the trial, it is not to be expected that the court will bear the matter in mind and of his own motion exclude that which has been provisionally admitted; and it is the duty of counsel objecting to the admission of such testimony to remind the judge of the circumstances and to invoke a later and final ruling, if he so desires. In such circumstances as those referred to, the failure of the court to exclude testimony thus provisionally admitted is not error, unless a request to that effect be preferred by the party originally objecting to the admission of the evidence. *Stone* v. *State*, 118 *Ga.* 705 (9) (45 S. E. 630, 98 Am. St. R. 145); *Cawthon* v. *State*, 119 *Ga.* 395 (7) (46 S. E. 897); *Thomas* v. *State*, 129 *Ga.* 419 (2) (59 S. E. 246); *Sasser* v. *State*, 129 *Ga.* 541 (3) (59 S. E. 255); *Lindsay* v. *State*, 138 *Ga.* 818 (7) (76 S. E. 369).

2. Where the case referred to an auditor is one in equity, and exceptions of fact are filed to the report of the auditor, the approval or disapproval of the exceptions to the findings of the auditor upon the facts is within the discretion of the court, and the exercise of that discretion will not be interfered with unless manifestly abused.

3. An exception of fact to the report of an auditor purporting to set forth evidence adduced upon the hearing before the auditor is too defective to be considered unless there is embraced in the exception so much of the evidence as is referred to, as fully and as clearly as would be required in the ground of a motion for a new trial complaining of the admission or rejection of certain specified evidence.

4. If, considering the report of an auditor as a whole, the result reached by the auditor in his ultimate finding is a correct conclusion of the cause, the report should be confirmed, regardless of the reasons assigned by the auditor as those upon which his finding is predicated.

5. Where a husband clothed by a written power of attorney, with general control of the property of his wife (said husband being also president of the corporation in question), cancelled a certificate of stock for 1400 shares standing in the name of his wife, and had a new certificate issued to her for 600 shares only, having certificates for 800 shares of stock issued to himself which were taken from his wife's previous holdings, and thus placed them in his own name upon the books of the corporation, even though the legal title passed to the husband, the shares were impressed with a trust, and they were in equity still the property of the wife, as were likewise all income or profits arising or derived from said stock.

6. Under the circumstances stated in the foregoing headnote, without more, a finding upon the part of an auditor that the estate of the husband, now deceased, was entitled to any portion of the proceeds of the 800

Appeal and Error 3 C. J. p. 824, n. 38; 4 C. J. p. 895, n. 61.

Equity 21 C. J. p. 621, n. 17; p. 626, n. 37.

Husband and Wife 30 C. J. p. 619, n. 98; p. 620, n. 99, 1, 10; p. 671, n. 97; p. 1031, n. 61 New.

Trial 38 Cyc. p. 1345, n. 31.

shares of stock would be reversed, because a wife can not sell any portion of her separate estate to her husband without an order from the judge of the superior court authorizing and confirming the sale, and in this case no such order was sought or obtained.

7. Nevertheless, in Georgia, a wife, except as otherwise restrained by law, has the same powers and rights as a feme sole. She can make some contracts with her husband. She can appoint her husband as her agent. She can enter into partnership with her husband in business enterprises, and the right to appoint an agent or to operate a joint business necessarily includes the right to make settlements in order to terminate the agency or the business.

8. The evidence authorized, if it did not demand, a finding that the husband was many years ago appointed by the wife as her agent, that for many years he transacted all her business, with results highly profitable to her separate estate, until finally there was a termination of the agency by mutual consent and a settlement between the parties which was free from fraud and not effected by any undue influence exerted by the husband over the wife. There was evidence showing that the terms of this settlement had been recognized by both parties as an accord and satisfaction, and were accepted and acted upon by the wife up to the time of her husband's death.

9. The court did not err in disapproving the exceptions of fact and overruling the exceptions of law, and thereafter making the report of the auditor the decree of the court.

No. 4623. September 15, 1925.

Equitable petition. Before Judge Ellis. Fulton superior court. November 4, 1924.

*Colquitt & Conyers, L. M. Blair,* and *Morris, Hawkins & Wallace,* for plaintiff.

*George & John L. Westmoreland* and *Reuben R. & Lowry Arnold,* for defendants.

Russell, C. J. Mrs. Julia H. Bacon brought an equitable action to the July term, 1922, of Fulton superior court, to recover of Sumner W. Bacon as executor of the will of G. M. Bacon, deceased, and Sumner W. Bacon individually, certain property described in her petition, or its value. The defendants filed their answer on July 21, 1922; and on January 26, 1924, the court passed an order referring the case to Edgar Watkins, as auditor, to hear and report on the questions of law and fact set up and contended for by the several parties. The auditor filed a report of his rulings and findings on April 26, 1924, together with his report of all the evidence offered before him. On May 15, 1924, the plaintiff filed her exceptions to the report of the auditor, these exceptions being classified under three heads: (1) Exceptions to rulings on objections to evidence. (2) Exceptions to findings of facts.

(3) Exceptions to conclusions of law. On May 20, 1924, the auditor, with consent of all the parties, filed a supplemental report containing certain documentary evidence which had been introduced on the hearing before him, but which was not fully embodied in his report of the evidence previously filed; and on June 17, 1924, with the consent of all the parties the auditor filed a supplemental report containing additional findings and rulings in the case. On November 4, 1924, the judge entered an order and judgment overruling and disapproving all of the exceptions of law and fact filed by the plaintiff to the report of the auditor, and on the same day entered a judgment and decree making the report of the auditor, both original and amended, the judgment and decree of the court, adjudging all issues against the contentions of the petitioner. Exception is taken to this decree, and it is assigned as error upon the ground that "it was erroneous and contrary to the law and evidence in said case to overrule and disapprove said exceptions." In the bill of exceptions the plaintiff further excepts to the judgment overruling and disapproving her exceptions of law, upon the ground that the court erred in overruling and disapproving said exceptions, because under the law and under the evidence in the case the court should have sustained and approved all of the exceptions of law upon each and all of the grounds therein taken and set out. In the bill of exceptions it is alleged that the rulings upon the exceptions of law and of fact which are excepted to are controlling in the result of the case, and, being controlled in effect, the judgment and decree could not be a legal termination of the case, and thereupon exception is taken to the decree "upon the ground and for the reason that, as plaintiff insists, treating as true and correct the findings of fact as made by the auditor, the said final judgment and decree of the court is erroneous in that it is contrary to the law, and contrary to the evidence in said case, and contrary to the findings of fact as made by the auditor, and plaintiff says that said final judgment and decree of the court is erroneous and contrary to law, even though the findings of fact as made by the auditor be treated as true and correct." From the above statement, as gathered from the bill of exceptions, it will be seen that but two major questions, each necessarily subject to subdivision, are presented for determination. (1) Did the court err in overruling the exceptions of fact, and in thereby refusing to sub-

mit any question of fact to a jury? (2) Did the court err in overruling the exceptions of law, or any of them, whereby a result was reached. different from that which should have obtained in the case?

In 1876 G. M. Bacon married Julia R. Holcomb, a daughter of Thomas Holcomb, of Savannah. It appears from the record that Mr. Bacon was at the time without financial means, but it does not appear that the bride received a dowry of any kind or amount. In 1883, after Mr. Bacon had farmed, either as an overseer or tenant, for several years, he went upon what was known as the "Troup Butler Place" containing 1025 acres of land in the 9th district of Mitchell County. The place was then in possession of one Davis, as receiver of Bacon and Welch. On January 25, 1884, Mr. Bacon borrowed $2000 from his father-in-law, Thomas Holcomb, and executed and delivered to him his note for that amount. On the next day, January 26, 1884, Davis, the receiver, in consideration of $2250 made a deed to the Troup Butler place, containing 1025 acres, and embracing certain numbered land lots therein named, to Julia H. Bacon, and the deed was duly recorded. This land appears to have been always returned for taxes by the husband, G. M. Bacon, in the name of Mrs. Bacon and as her property, until and except as she sold portions of it from time to time, and certainly until she transferred the major portion of it to the G. M. Bacon Pecan Company in 1903. In 1903 a charter was granted by the superior court of Mitchell County, incorporating the G. M. Bacon Pecan Company, with a capital stock of $46,000, divided into 1840 shares of the par value of $25 each. The corporation was organized, and Mrs. Bacon became the purchaser of 1600 shares of the capital stock of the corporation of the par value of $40,000. In consideration of $38,000 worth of the capital stock she conveyed to the corporation, the G. M. Bacon Pecan Company, 719-1/4 acres of the original 1025 acres to which she received the deed in 1884. The remaining $2000 worth of stock was paid for by a lease of another portion of the original tract not included in the tract sold to the pecan company, but which had been planted in pecans. A portion of this outside land was leased for five years and another portion for ten years. Thus, in the organization of the G. M. Bacon Pecan Company, Mrs. Bacon was undoubtedly the owner in her own name of 1600 shares, an overwhelming majority,

of the entire capital stock of 1840 shares. Of the remaining 240 shares G. M. Bacon himself owned but two shares, the remainder being divided between several persons whose ownership is immaterial. G. M. Bacon became president of the company, and, according to the evidence, devoted his entire time and every energy to the promotion of the interest of the corporation.

In 1909 the G. M. Bacon Pecan Company, in the improvement of its property (and perhaps on account of delay in returns) had become involved in debt, and its property had been subjected to three mortgages, the amounts not being disclosed, and it became necessary that the proposition be "financed." Accordingly a charter was applied for and granted by the superior court of Mitchell County, incorporating the G. M. Bacon Pecan Groves, with a capital stock of $200,000. An arrangement was made for the issuance and sale of $100,000 of bonds, and a certain portion of the stock to be issued was set apart as a bonus to be given the purchasers of the bonds. The amount of stock allotted as a bonus does not appear from the record. However, it is undisputed that it was agreed by all of the stockholders of the G. M. Bacon Pecan Company that a certain defined and described portion of the property of the G. M. Bacon Pecan Company should be sold to the new corporation, the G. M. Bacon Pecan Groves, in consideration of each stockholder in the Pecan Company being given one $100 share of stock in the Pecan Groves in exchange for the $25 share of stock held in the Pecan Company, and thereupon the Pecan Company would execute a deed to the Pecan Groves to the realty described in the deed. For some reason—doubtless by reason of the bonus stock to which we have referred—the shares of stock to be assigned in the Pecan Groves lacked 72 shares of equalling the number of shares in the Pecan Company. However, the Pecan Company, as before stated, had property not embraced in the sale to the Pecan Groves, and Mrs. Bacon agreed to take these assets in lieu of 72 of her shares. The evidence to the effect that this property was worth more than $7200 is undisputed, as is the fact that the G. M. Bacon Pecan Company, after the sale of the major portion of its property to the G. M. Bacon Pecan Groves, continued to do business with the plaintiff, Mrs. Julia H. Bacon, as president and sole owner of its stock. It is in evidence that shortly prior to the organization of the Pecan Groves corporation, and preceding the sale by the Pecan Company of the

major portion of its property to the Pecan Groves, G. M. Bacon canceled the certificate of stock standing in his wife's name, and issued to himself in lieu thereof a certificate for 800 shares of stock previously standing in the name of his wife upon the books of that company; so that, according to the books of the company, Mrs. Bacon was the owner of only 637 shares of stock instead of 1437. The evidence does not disclose that Mr. Bacon had any authority from his wife empowering him to make the change whereby he apparently became the owner of property worth at par $20,000 which theretofore had been the property of his wife. Prior thereto in 1906 Mrs. Bacon had given her husband a general power of attorney which authorized him "to act for her in all things as fully and completely as she could do herself, and to sign for her as such [attorney in fact] all deeds, mortgages, notes, checks, and all other commercial paper and conveyances as he may deem proper." But this would not authorize him, as her agent, to himself become the purchaser of any of her property. A husband can not purchase the property of his wife without an order authorizing the purchase, granted by the superior court of the county of the wife's domicile. Civil Code (1910), § 3009. We agree fully with the contention of counsel for the plaintiff that the transfer of this stock by Bacon from his wife was altogether void; and if nothing more appeared, the plaintiff in this case would have the right to trace the proceeds of this sale wherever and to whomsoever it may be attached, and recover them. G. M. Bacon is dead, and it is immaterial whether the transfer be treated as a purchase by the agent from his principal, his wife, or a fraudulent misappropriation of her property without her knowledge or consent; for in either event the title remained in the wife. So we hold that the auditor was correct in his finding of fact number 54, that "if the 800 shares of stock in controversy in this proceeding did not become, under the facts hereinbefore found, the property of G. M. Bacon, then the account of Mrs. Julia H. Bacon with the defendant as executor would stand as follows: Amount from sale of G. M. Bacon Pecan Groves stock to American Pecan Company, $123,505.20. Amount received by Mrs. Bacon up to time of filing of suit, $33,472.25; received by Mrs. Bacon since filing of suit from American Pecan Company, collections, $14,375.00, proportion fee R. J. Bacon, $9,643.00. Sundry payments. Finding 53, $3,392.00. Total amount

received by Mrs. Bacon to date $60,882.25. Balance $62,622.95." This is a finding by the auditor that Mrs. Bacon is entitled to be paid $62,622.95, unless the 800 shares of stock had become the property of G. M. Bacon "under the facts hereinbefore found;" and as the auditor in concluding his report, so far from finding that Mrs. Bacon was entitled to $62,622.95, found on the contrary that she was entitled to only $7535.75, it is clear that merit of the final report of the auditor and of the decree of the court which followed it is dependent upon the correctness in fact and the potency and cogency in law of "the facts hereinbefore found," for in finding of fact 55 the auditor says: "It is definitely shown that the properties now in the hands of defendant as executor were acquired with and are the proceeds of the consideration of the sale of the stock of plaintiff and her husband to the American Pecan Company; and if plaintiff is entitled to recover because of any invalidity of the disposition of her 800 shares in the G. M. Bacon Pecan Company, such property now in the hands of the defendant would be held by him as successor of G. M. Bacon, who was a constructive trustee for plaintiff." We assume the statement "who was a constructive trustee for plaintiff" to mean no more than that the transfer of the 800 shares by G. M. Bacon from his wife to himself without her knowledge or consent, so far as appears from the evidence, impressed these 800 shares of stock with a trust in behalf of the wife to the extent that her title was superior to any title or interest that her husband or his assigns could obtain, and continued to attach to the property until her demands were satisfied. In this State one who is a free agent suffering under no disabilities can not have a trustee. The rule of law which impresses a trust in behalf of the wife upon property purchased with her separate funds, though title may be taken in the name of the husband, does not create the relationship of trustee and cestui que trust in the strict sense of those terms. The wife's title to the property, as a quasi cestui que trust, depends upon the fact that she is a wife, and that our law forbids any conveyance of any portion of her property to her husband unless it be by order of the superior court. For this reason, as we have already held, the attempt to transfer the 800 shares of stock from Mrs. Bacon to her husband, G. M. Bacon, if nothing more had occurred, would have been futile and void as a matter of law.

The auditor found that there was a settlement between the parties.

He recognized that if, by reason of the conjugal relationship, Mr. and Mrs. G. M. Bacon could not make this settlement, Mrs. Bacon would be entitled to $62,622.95. But the auditor, holding as a matter of law, under the facts found by him to be true, that the settlement was legal, found in favor of the plaintiff only $7535.75; so that the controlling question in this case is whether a wife can appoint her husband her agent, and, having done so, can terminate the agency and settle with her husband as her agent just as she could were he an agent and yet not her husband. The findings of the auditor referred to in the 54th finding as "the facts hereinbefore found," so far as the same are material to the questions now before us, are: "17. On June 23, 1906, Julia H. Bacon duly executed and delivered a power of attorney as follows: State of North Carolina, County of Henderson: This indenture, made this date hereinafter set forth, between Mrs. Julia H. Bacon, resident of Dougherty County, and G. M. Bacon, of the same county, both of the State of Georgia, witnesseth that the said Julia H. Bacon does hereby constitute and appoint as her attorney in fact the said G. M. Bacon, giving him full authority to act for her in all things as fully and completely as she could do herself, and to sign for her as such all deeds, mortgages, notes, checks and all other commercial paper and conveyances as he may deem necessary." This power of attorney was duly recorded, November 1, 1915. It appears that Mrs. Bacon was not present in person at any of the stockholders' meetings of 1905-06-08-09-10, or at any meeting of the G. M.· Bacon Pecan Company until the one which authorized the sale of the property of that corporation to the G. M. Bacon Pecan Groves. As to this the auditor found "27. Mrs. Julia H. Bacon was present at the meeting authorizing the sale of the property of G. M. Bacon Pecan Company to G. M. Bacon Pecan Groves, and was present at the organization meeting of the G. M. Bacon Pecan Groves. 28. Before the organization meeting of the G. M. Bacon Pecan Groves a statement of the stock ownership of Julia H. Bacon and G. M. Bacon was furnished each, and such statements showed that the 800 shares now claimed by plaintiff stood with other stock on the stock book in the name of G. M. Bacon, and the statement was discussed in the organization meeting where Julia H. Bacon was present, and the statement was discussed with her. 29. When the G. M. Bacon Pecan Groves was organized the stockholders in the

G. M. Bacon Pecan Company received a share of the par value of $100 in the new company for each share of the par value of $25 in the old company. In making this exchange it transpired that there were 72 shares less in the new company than there were in the old company, and when this was made known Mrs. Julia H. Bacon agreed to take 72 less shares in the new company than she then held in the old company in consideration of the transfer to her of certain properties, which properties the record shows were of a value in excess of $7200. 30. Prior to accepting property for her 72 shares, as stated in the next preceding finding, Julia H. Bacon consulted with the secretary of the Pecan Company, Mr. Mallary, and took time to consider whether or not she would accept the exchange. She took an active interest in the matter, which was discussed fully in the stockholders' meeting." In the 25th finding of fact the auditor found that on July 12, 1917, Julia H. Bacon quitclaimed the property taken over by the G. M. Bacon Pecan Groves. From the 31st finding of fact it appears that "On June 26, 1918, G. M. Bacon and Julia H. Bacon, in the presence of witnesses, duly executed a paper reading as follows:

"State of Georgia, Mitchell County: Whereas, upon organization of the G. M. Bacon Pecan Groves, a corporation incorporated under the laws of Georgia, stock subscriptions were made to the capital stock thereof, as follows: Preferred Stock—G. M. Bacon, 500 shares, $50,000; and whereas the following subscriptions were made to the common stock: G. M. Bacon 500 shares, $50,000; Mrs. Julia H. Bacon 500 shares, $50,000; and whereas some of the stock of the said Pecan Groves has been issued, and further stock is to be issued:

"Now, then, the said Julia H. Bacon for herself, and the said G. M. Bacon for himself, each in consideration of one dollar in hand paid by the respective parties named, do hereby request the G. M. Bacon Pecan Groves, the corporation aforesaid, to issue the stock of said company, in the following number of shares, ratifying and confirming those of such shares that have already been issued, as follows, to wit:

'COMMON STOCK'

| | | |
|---|---|---|
| G. M. Bacon | 10 | shares |
| Mrs. Julia H. Bacon | 245 | " |
| Admx. of Est. D. C. Bacon | 89 | " |
| W. B. Gillican | 49 | " |

393 shares

'PREFERRED STOCK'

| | | |
|---|---|---|
| G. M. Bacon | 501 | shares |
| Mrs. Julia H. Bacon | 320 | " |
| Admx. Est. of D. C. Bacon | 115 | " |
| W. B. Gillican | 63 | " |
| I. A. Bush & Son | 1 | share |

1000 shares"

From this finding it clearly appears that Mrs. Bacon knew she had only 565 shares of stock in the corporation, just as she knew previously that she was receiving a portion of the property of the G. M. Bacon Pecan Company in the place of 72 shares of her stock in the Pecan Groves; but however that may be, from the foregoing finding it definitely appears that Mrs. Bacon requested only 245 shares of common stock to be issued to her instead of 500 shares which had previously been subscribed for in her behalf. This settlement, however, might not by itself be conclusive; but in the 34th finding of fact the auditor found: "Prior to February, 1921, G. M. Bacon, in his own handwriting, made an entry of a settlement between himself and Julia H. Bacon on his old ledger, which entry was by Mr. Mallary, bookkeeper for G. M. Bacon, later and in February, 1921, transferred to the journal, and is as follows: Feb. 1921. G. M. Bacon 21, 2249.35 to Mrs. Julia H. Bacon 26 2249.35.

As per agreement, G. M. Bacon's 'Old Ledger, page 98,' whereby Mrs. Julia H. Bacon was to receive $5000 in cash and $50,000 in 6% bonds of the company to be formed 'succeeding' G. M. Bacon Pecan Groves, making her total interest $55,000. On account of the failure of the bonds to be issued, by mutual agreement between G. M. Bacon and Mrs. Julia H. Bacon, her interest was changed from $5000 cash and $50,000 in bonds to $5000 cash and interest to the amount of $50,000 in the American Pecan Company's notes given in settlement for the 'stock' of G. M. and Julia H. Bacon in

the G. M. Bacon Pecan Groves, making, as in the first instance, Mrs. G. M. Bacon's

| | | |
|---|---|---|
| Total Interest | | $55,000.00 |
| Credited 3/31/19 | $51,450.65 | |
| Credited 12/2/19 | 1,300.00 | |
| This entry | 2,249.35 | 55,000.00 |

"This settlement, if valid in law, gave Mrs. Julia H. Bacon more than she would have been entitled to receive from the sale of only the stock standing in her name."

After a careful examination of the report of the evidence submitted by the auditor, we are satisfied that the trial judge did not err in approving these findings of fact, and that there was in fact a settlement between the plaintiff and her husband. Was she competent to make the settlement? While a wife can not sell her property to her husband without an order of the superior court, and while she can recover her property if it be placed by her husband in his name instead of hers, she is in other respects, so far as we are aware, as free to manage her business as a feme sole. Whatever a person may do himself he may authorize an agent to do and do through an agent. It may be stated that generally a husband may contract with his wife. *Gray* v. *Collins,* 139 *Ga.* 776, 780 (78 S. E. 127). In the case of *Cain* v. *Ligon,* 71 *Ga.* 692, 694 (51 Am. R. 281), the court enumerated the cases where the wife is prohibited from acting or contracting, and a contract of agency is not included in the enumeration. The court said: "She is inhibited from entering into any contract of suretyship, or from assuming the debts of her husband, and any sale in extinguishment of his debts is made absolutely void. Code [1882], § 1783, and cases cited in note thereunder. No contract of sale made by a married woman of her separate estate with her husband, or her trustee, is valid, unless allowed by order of the superior court of the county of her domicile." From the case of *Barber* v. *Barber,* 125 *Ga.* 226 (53 S. E. 1017), it appears that the husband may be the agent of the wife, and that naturally and necessarily she would have a right to a settlement with him. The principles there stated are applicable to the case at bar. In that case the husband had some of the property of the wife and managed it as her agent. No account was rendered by him to the wife, but after the lapse of several years he delivered up to his wife possession of the part of the prop-

erty he had been operating. Afterwards, at a time when the ordinary bar of the statute would have attached between a principal and an agent, the wife brought suit. The court held that the relation of principal and agent continued only until the husband surrendered up to the wife the remnant of the property left, and that the surrender of this property was sufficient to indicate to any prudent person that he considered his trust relation at an end. The court held: "As long as the husband is in possession of the property, using it for the wife's benefit and recognizing her ownership, no lapse of time will bar the wife from asserting her title or calling the husband to an accounting. The statute of limitations does not run against the right of the wife to call for an accounting, until there has been an account rendered, accompanied by an offer to settle, a refusal upon demand to settle, a notice of adverse claim, an express repudiation of the fiduciary relation, such a change of circumstances of the parties as would be reasonably calculated to put the wife on notice that the relation was no longer recognized, or something to indicate to a reasonably prudent person that the relation has ceased." The ruling in this case plainly implies that the husband and wife could have made a valid settlement at any time. The court laid stress on the fact that up to the time of surrendering the property no settlement had been made, and on the fact that surrendering the property ended the agency. This case also shows that the relation between the plaintiff in error and her husband in the case at bar was one of principal and agent. In *Oliver* v. *Hammond*, 85 *Ga.* 323 (11 S. E. 655), this court recognized that a settlement can be made between a husband and his wife where the husband has been acting as a general agent for the wife. In *Burney* v. *Savannah Grocery Co.*, 98 *Ga.* 711 (25 S. E. 915, 58 Am. St. R. 342), this court held that a husband and wife can contract as partners. See also *Ellis* v. *Mills*, 99 *Ga.* 490 (27 S. E. 740). In the *Burney* case, supra, it was held that "where a partnership between them [husband and wife] is formed, and she is held out to the world as one of its members, she becomes liable to one who deals with the firm upon the faith of her membership therein." The court considered the married woman's law, and held that this law "went far towards the emancipation of married women. The only restrictions left upon their power to contract were designed for their protection and benefit. In all cases where these

restrictions do not apply, they are as free to contract as men; and no one of these restrictions, so far. as we have been able to ascertain, prevents a married woman from engaging in a partnership business either with her husband or with another." In the *Burney* case the court "reached the conclusion that there is no law or public policy in Georgia which forbids such a partnership, provided, always, it is bona fide and actual, and not merely colorable." The right to appoint an agent and the right to enter a partnership both necessarily imply the right to effect a settlement of either. A contract of settlement is not a contract of sale. It is, at most, a provision for appropriate compensation for services rendered in the case of an agency, and a provision for division of profits or losses, as the case may be, in the case of a partnership. And though no sale of any of the wife's property may be had to her husband without an order of the superior court, there is no requirement that a female who happens to be a married woman will not be permitted to settle with her agent or to dissolve a partnership except with the permission of the superior court, a provision which would greatly hamper and impede the activities of a business woman.

*Judgment affirmed. All the Justices concur.*

HINES, J, concurs in the result.