FOSTER, Sheriff, *v.* WITHROW.

No. 15549. SEPTEMBER 6, 1946.

*E. E. Andrews, Solicitor-General, John H. Hudson,* and *J. Walter LeCraw,* for plaintiff in error.

*Kelley & Hamrick,* contra.

HEAD, Justice. (After stating the foregoing facts.) The particular question presented by this case, whether or not a husband can institute a peace-warrant proceeding against his wife, has never been decided in this State. Section 76-201 of the Code, in regard to peace-warrant proceedings, reads as follows: "Upon the information of any person, under oath, that he is in fear of bodily harm to himself or his family, *from another,* or of violent injury to his property, any judicial officer authorized to hold a court of inquiry may issue his warrant against such other person, requiring his arrest; and if, upon the return thereof, the court is satisfied, upon hearing the evidence of both parties, that probable cause for such fear exists, he may require the accused to give bond, with good security, to keep the peace as against the person, family, and property of the affiant, and on failure to give the bond, shall commit him to jail." (Italics ours.) It will be noted that this section does not exclude by its terms the right of the husband to institute such proceedings against his wife.

The Code, § 76-205, reads as follows: "A wife may require a

bond to keep the peace against her husband." Counsel for the defendant in error, Mrs. Withrow, contend that it is significant that Chapter 76-2 of the Code contains a provision that a wife may require a bond to keep the peace against her husband, but contains no provision that a husband may require a bond to keep the peace against his wife; that at common law neither spouse had a right to sue the other for a personal tort committed upon him or her by the other, and in the absence of a statute giving the husband the right to require a bond, he would have no authority to sue on the bond; and that the sheriff was without authority to hold her in jail on account of her default in making a bond which the husband alone could sue on in case of a breach, and which suit he could not maintain because the husband can not sue his wife in such cases.

Under the common law, which is of force in this State unless changed by statute, husband and wife became by marriage one person, and the entire legal existence of the woman was completely merged or incorporated in that of the husband. 26 Am. Jur. 632, § 3. Under early common law, the husband had authority, in many things, over the person of the wife; she was in a condition of complete dependence and the inferior of her husband in all respects. 26 Am. Jur. 640, § 11. The theory of the common law that the husband and wife are in legal contemplation only one person, and that person the husband, was the basis of the rule that the married woman was incapable of binding herself by contract, of acquiring or disposing of property without the consent of her husband, and of suing or being sued alone. 26 Am. Jur. 645, § 19. This unity in legal contemplation was also the basis of the rule that husband and wife could not sue each other in tort, or prosecute each other. However, even at common law, husband and wife were criminally liable for crimes against each other. 27 Am. Jur. 243, § 643.

The statement of our statute law in regard to the present civil relationship of husband and wife is found in the Code, § 53-501, which is as follows: "The husband is the head of the family and the wife is subject to him; her legal civil existence is merged in the husband, except so far as the law recognizes her separately, either for her own protection, or for her benefit, or for the preservation of public order." The civil rights of the wife were sub-

stantially changed by the passage of the act, commonly known as "The Married Woman's Act," approved December 13, 1866, giving the wife the right to keep, acquire and control her separate property. Under such act (Code, § 53-502), this court has held that a husband can maintain a bail-trover action against his wife (*Eddleman* v. *Eddleman,* 183 *Ga.* 766, 189 S. E. 833, 109 A. L. R. 877); that a husband and wife can make some contracts with each other (*Bacon* v. *Bacon,* 161 *Ga.* 979 (7), 133 S. E. 512); and that the husband and wife can become copartners in a business enterprise (*Burney* v. *Savannah Grocery Co.,* 98 *Ga.* 711, 25 S. E. 915, 58 Am. St. R. 342). In *Miller* v. *Straus,* 38 *Ga. App.* 782 (145 S. E. 501), it was stated: "At common law a husband was liable for the torts of his wife. . . It is now the law of Georgia that a husband is liable for the torts of his wife only when they are committed by her in the capacity of agent." In 1943 the General Assembly passed an act (Ga. L. 1943, p. 316; Code, Ann. Supp., § 53-512), providing that a husband shall not be entitled to, or receive, the salary or wages of his wife, except by her consent. These citations give some indication of how the common law regarding the civil relationship of husband and wife has been changed and modified.

The policy of our statute law in regard to the relationship of husband and wife in criminal proceedings is stated in the Code, § 38-1604, as follows: "Husband and wife shall not be competent or compellable to give evidence in any criminal proceeding for or against each other, except that either shall be competent, but not compellable, to testify against the other upon the trial for any criminal offense committed, or attempted to have been committed, upon the person of either by the other."

With this review of the general policy of our law in civil and criminal proceedings in regard to the relationship of husband and wife, we are confronted with the problem of classifying the peace-warrant proceedings provided for by the Code, Chapter 76-2, and of applying the policies of our law applicable to such proceedings. The statutes as to requiring good behavior bonds and bonds to keep the peace occupy a unique place in our law. In the strictest sense, proceedings requiring a peace bond are neither criminal nor civil proceedings, although they are more in the nature of criminal. than of civil proceedings. 11 C. J. S. 826, § 17. In *Hall* v.

*Browning,* 71 *Ga. App.* 839 (32 S. E. 2d, 424), Judge MacIntyre for the Court of Appeals stated as follows: "The peace bond is analogous to a bail bond or recognizance in a criminal case, where the defendant has been bound over by a justice of the peace at a commitment trial and required to give a bail bond or recognizance for his subsequent appearance in the superior court." The case of *Levar* v. *State,* 103 *Ga.* 42 (29 S. E. 467), contains some history of peace-warrant proceedings, and at page 44 it was said: "It would seem that cases of this kind were dealt with as being either criminal, or quasi-criminal, proceedings. In this connection, it is worthy of note that the act of 1827 designated the party suing out the warrant as 'prosecutor,' and the act of 1850 referred to the defendant as the 'accused party,' terms applicable to criminal cases only." In *Shirley* v. *Terrell,* 134 *Ga.* 61 (67 S. E. 436), it was stated: "It becomes apparent that the peace bond which may be required in proceedings before a justice of the peace, upon proper application therefor and proper evidence to support the same, is more in the nature of a bond or recognizance required by a justice of the peace and other judicial officers, upon holding courts of inquiry, when bail is required of a person accused of crime for his subsequent appearance to answer such charges as may be preferred against him in another tribunal having jurisdiction to try the offense with which he is charged." In *Rhodes* v. *Pearce,* 189 *Ga.* 627 (7 S. E. 2d, 251), it was said: "These two last-mentioned sections of the Code [§§ 76-101, 76-201] are penal statutes."

It would seem from the above citations that our courts have generally considered peace-warrant proceedings as being in the nature of criminal proceedings, and the policies of our law regarding the relationship of husband and wife in criminal proceedings should apply to a peace-warrant proceeding. The bond which may be required in a peace-warrant proceeding is not a voluntary or an official bond, and is not a bond to indemnify against a breach of a contract. *Shirley* v. *Terrell,* supra. On the breach of the bond the person for whose protection the bond is given may sue on the bond, and in the event of a recovery, judgment for the full amount of the penalty stipulated in the bond will be awarded against the defendant and his sureties. There is no question for a jury as to the amount of the damages sustained, since the amount of the bond

has been set as the penalty to be forfeited by the defendant in case of a breach of the peace. *Shirley* v. *Terrell,* supra. A suit for the recovery of the amount of the bond would not, therefore, be a suit for a tort, which can not be maintained by a husband against his wife.

It has always been the policy of our law that husband and wife are criminally liable for crimes committed against each other, and it is well recognized that a wife would be criminally responsible for crimes committed against her husband, such as murder, manslaughter, assault with intent to murder, and assault and battery. "The requirement of surety of the peace is preventive justice and consists in obliging those persons of whom there is a probable ground to suspect future misbehavior, to stipulate with, and to give full assurance to, the public that such offense as is apprehended shall not happen, by finding pledges or securities for keeping the peace." 11 C. J. S. 826, § 17. The primary purpose of the peace-warrant proceeding is not to award the person seeking its protection money damages for injuries which he may receive; the primary purpose is to prevent violence, and keep the peace. If the magistrate hearing the proceeding determines that the person instituting it has probable cause for his fears, then the one against whom the proceeding is brought must find persons willing to be securities on a bond covenanting that he or she will keep the peace, or be committed to jail. "Preventive justice, on every principle of reason, of humanity, and of sound policy, is preferable to punitive justice, the execution of which is always attended with harsh circumstances. . . As a restraint on the commission of crime in the nature of a breach of the peace or other misdemeanor, courts in this country generally have power to bind a person in a penal bond to the state, conditioned that such person will keep the peace of the state as to all of its citizens, and especially as to the one at whom the threatened breach of the peace appears to have been pointed." 8 Am. Jur. 842, § 19. Since the husband is competent to give evidence in any criminal proceeding against his wife on her trial for a criminal offense committed or attempted to have been committed upon his person (Code, § 38-1604), then we see no reason why he should not be allowed to make an oath that he is in fear of bodily harm from his wife, and thereby institute proceedings to restrain his wife from committing a crime or misdemeanor against him.

We call attention to the fact that the only question before this court is whether or not the husband was competent to institute the peace-warrant proceeding. It was not shown what evidence was submitted to the justice of the peace on which he made his decision that Mr. Withrow had probable cause for the fears which he had concerning his wife. It is, of course, the duty of the justice of the peace hearing the case to ascertain, to the greatest degree of certainty possible, whether the applicant for the peace bond has actual fears, or whether the proceeding is instituted only for the purpose of annoying or harassing the person against whom it is brought. The fact that a husband might bring such a proceeding against his wife because he was angry with her or tired of her, can not affect our ruling here. The law must presume that the justice of the peace will perform his duty in hearing evidence from both sides and making a legal and just decision.

Counsel for both the plaintiff in error and the defendant in error advance logical arguments as to the reason why Chapter 76-2 of the Code has a section specifically allowing the wife to require her husband to make the peace bond, but none allowing the husband to require one against the wife. Since a similar provision has been in our statute laws since the Code of 1862 (§ 4634), the intent of the codifiers of that Code must necessarily be a matter of speculation at this time. It is common knowledge, however, that through the period from 1862 to the present time the status of married women in this State has undergone a complete transformation. At the time peace-warrant proceedings appeared in the Code of 1862, the relation of the wife to her husband was more nearly in accord with the Biblical statement made to Eve, concerning Adam, "he shall rule over thee." Gen. 3:16. While the codifiers of that Code could envision a situation where a wife might need the law's protection to keep her husband from harming, or threatening to harm her, it is probable that it did not occur to them that the wife would become a menace to the husband's peace. In our present generation, the wife has equal rights with the husband in all things necessary to her protection, and the law gives her several safeguards which the husband does not have. The theory of the law that the husband is the head of the family and the wife is subject to him has become in most instances merely a legal theory. However, while our customs have changed, and

women have become almost completely emancipated from the laws and customs that once bound them, subsequent codifiers and legislatures have not changed the provision of law now found in the Code, § 76-205. In fact, no substantial changes have been made in peace-warrant proceedings since the Code of 1862. We do not think, however, that the fact that the law has not been changed would prevent the husband from requiring the peace bond to be made by his wife, since under the provisions of the peace-warrant law he is not excluded. Rather it may be said that the change in the status of married women by law and custom since the time when § 76-205 was originally placed in the Code has rendered such section superfluous.

In our judgment it would violate no principle or policy of our law for the husband to be allowed to institute a peace-warrant proceeding against his wife to require her to keep the peace as against him; and since the plaintiff in error, as sheriff, held Mrs. Withrow under a valid commitment of the justice of the peace issued because she did not make bond in the peace-warrant proceeding against her, the court erred in discharging her on the hearing of the writ of habeas corpus.

*Judgment reversed. All the Justices concur.*