## 55716. BRADLEY v. TENNECO OIL COMPANY et al.

WEBB, Judge.

Valesta Faye Bradley appeals from two separate orders of the trial court sustaining motions for summary judgment of the defendants James O. Bradley and Tenneco, and the dismissal of her complaint seeking damages for slander and false arrest.

Her complaint and answers to interrogatories indicate that at the time the cause of action arose Mr. and Mrs. Bradley, who were subsequently divorced, were married but separated, and that he was employed by Tenneco. Mrs. Bradley returned from Texas with their four-year-old son, whose custody had been granted to her by a Texas decree, to the home where they had formerly lived in Marietta. She found letters from another woman addressed to Bradley, who was out of town, and called him asking him to meet her to finalize the divorce. He returned about midnight, forced his way into the house, and an altercation ensued in which Mrs. Bradley was physically assaulted. She fled to a neighbor's home and called the police. While she was gone Bradley took the child and left in the family car, which had been given to

Mrs. Bradley to use, and hid at a place or places unknown.

The police refused to intervene, telling Mrs. Bradley that this was a domestic argument, and she returned to find her car and child missing. Bradley's company car furnished by Tenneco was there. Mrs. Bradley had keys to this car, had received express permission to drive it and was a named insured on the insurance policy covering it. Using her own keys she drove the Tenneco car around the immediate neighborhood for several hours searching for her child and her own automobile. Unable to locate them she returned to Bradley's house. As she drove up she was arrested on a warrant taken by Tenneco charging her with larceny of the Tenneco vehicle, which Bradley had told his superiors his wife had taken and was "headed toward Texas."

Mrs. Bradley was taken to jail and incarcerated with several accused felons. She had no money, no family and no friends in the area, and in spite of several telephone calls to Bradley, his supervisor and the Tenneco attorney, she was allowed to remain in jail for three days. During her incarceration Mrs. Bradley acquired an embarrassing and painful dermatological problem as a direct result of being unable to change clothes. Also, Bradley obtained an order giving him temporary custody of their minor child, which caused her a great deal of time and money to reverse subsequently. She was released from jail only when she agreed to sign a release exonerating Tenneco for having caused her to be arrested. After having signed this release an attorney was appointed to represent her, and, unknown to her, counsel was also retained in her behalf by her mother who had arrived from Texas.

Alleging that at all times during the above described actions Bradley was the employee and agent of Tenneco, and in acting in a manner which on the surface appeared to be to protect Tenneco's property as its agent, Mrs. Bradley brought suit against Bradley and Tenneco for all the acts committed by Bradley as well as Tenneco's own slanderous statements. Bradley and Tenneco filed motions for summary judgment. Bradley was dismissed on the basis of interspousal immunity. The issue of the release signed by Mrs. Bradley and its validity was not considered by the trial court, but Tenneco was granted

summary judgment on the ground that it could not be liable on a derivative basis for the alleged torts of its agent since the action had been dismissed as to Bradley. Mrs. Bradley appeals both judgments.

1. Insofar as the dismissal of Mrs. Bradley's suit against her husband is concerned, this state has long adhered to the fundamental common law concept that "a husband and wife, in legal fiction, are one person; and the common law is of force in Georgia, except where changed by the statute law of this State; and under the common law neither could maintain against the other a suit based on tort. [Cits.]" *Eddleman v. Eddleman,* 53 Ga. App. 368 (186 SE 154) (1936), s.c. 183 Ga. 766 (189 SE 833, 109 ALR 877) (1937). "The civil rights of the wife were substantially changed by the passage of the act, commonly known as 'The Married Woman's Act,' approved December 13, 1866, giving the wife the right to keep, acquire, and control her separate property. Under such act (Code § 53-502), this court has held that a husband can maintain a bail-trover action against his wife (*Eddleman v. Eddleman,* 183 Ga. 766 [supra]); that a husband and wife can make some contracts with each other (*Bacon v. Bacon,* 161 Ga. 979 (7), 133 SE 512); and that the husband and wife can become copartners in a business enterprise (*Burney v. Savannah Grocery Co.,* 98 Ga. 711, 25 SE 915, 58 Am. St. R. 342). In *Miller v. Straus,* 38 Ga. App. 782 (145 SE 501), it was stated: . . . 'It is now the law of Georgia that a husband is liable for the torts of his wife only when they are committed by her in the capacity of agent.' In 1943 the General Assembly passed an act (Ga. L. 1943, p. 316; Code Ann. Supp. § 53-512), providing that a husband shall not be entitled to, or receive, the salary or wages of his wife, except by her consent. These citations give some indication of how the common law regarding the civil relationship of husband and wife has been changed and modified." *Foster v. Withrow,* 201 Ga. 260, 262 (39 SE2d 466) (1946).

A generation later little legislative improvement can be detected in the area of interspousal immunities. However, this court in 1952 found it to be "readily apparent" that "the changed status of modern woman renders archaic the legal anomaly which extends redress

by way of the criminal and divorce courts, but denies it to her in a civil action." *Wright v. Wright,* 85 Ga. App. 721, 723 (1) (70 SE2d 152) (1952). Nevertheless, it was concluded that Code § 53-501 prohibited such suits. That Code section recites that "The husband is the head of the family and the wife is subject to him; her legal civil existence is merged in the husband, except so far as the law recognizes her separately, either for her own protection, or for her benefit, or for the preservation of public order." Ga. L. 1855-1856, p. 229.[1]

While the statute does "not purport to change the common law in respect to personal torts committed by one spouse against the other...," *Eddleman v. Eddleman,* 183 Ga. 766, 771, supra, neither does it expressly codify it. It is the appellate courts of this state which have enucleated the doctrine of interspousal immunity in civil suits solely from the superannuated common law dogma. It should be perpetuated no longer.

We think it is significant that almost two centuries ago, when the common law of England was made the law of this state by an Act of the General Assembly approved February 25, 1784 (Cobb's Dig. 721), the caption of that Act stated that "it was absolutely necessary for the well-governing of the State that laws properly adaptable to the circumstances of the inhabitants be at all times in force. Thus. . . common-law rules unsuited to the conditions in this State are not of force here and were not made so by the act of 1784." *Hornsby v. Smith,* 191 Ga.

---

[1] The law cited in the annotated Code is not the same as the provision quoted above. The statute as printed in the official Acts of the General Assembly for the biennial session of 1855 and 1856 at page 229 provided "That hereafter, when persons intermarry, the husband shall not be liable for the debts of the wife, further than the property received through the wife will satisfy, and that the property received by the husband through the wife shall in no case be liable for the debts, defaults, or contracts of the husband existing at the time of the marriage." The Code section as now printed was adopted in the Code of 1933.

491, 496-497 (13 SE2d 20) (1941).

In *Hornsby* the Supreme Court rejected the common law maxim that an owner of property has an absolute right to its use, regardless of motive, and held that malicious use of property resulting in injury to another was unlawful. In abrogating the common law rule it noted: "Some courts have held that the relief here sought can be granted only by legislation, and that in the absence of such legislation the courts are without power to grant it. Usurpation of the functions of the legislature by the courts is never justified, and will not be tolerated. But this fundamental principle is not upheld by a refusal of the judiciary to discharge to the limit of its authority the functions imposed upon it by the Constitution, upon the excuse that further legislation is necessary. Legislation can declare general principles, and it is the duty of the court to apply those principles to varying statements of fact. For legislation to cover fully and specifically every conceivable state of facts would require such voluminous enactments as would render their use impractical." Ibid. at p. 500. The time has come when due process concerns must take precedence over the illusionary promotion of the stability and longevity of the institution of marriage for the purported preservation of "public order." The law must reflect changes in societal patterns and individual priorities. Since the legislature has not seen fit to repeal the statute,[2] which the courts have construed to promulgate the rule of interspousal immunity, then it is incumbent upon the courts to act. The rule, having been judicially created, can be judicially abrogated. See *Sheley v. Board of Public Education,* 233 Ga. 487 (212 SE2d 627) (1975). "[C]ourt-made common law rules, not altered by statute or constitution, may be adjusted to different government and different social needs, different from those existing at common law." *Crowder v. Dept. of State Parks,* 228 Ga. 436, 445 (185 SE2d 908) (1971) (Justice Felton, dissenting).

---

[2] This was suggested at least six years ago in a study of Georgia law. See Bent & Higby, "The Equal Rights Amendment and Georgia Law."

The Georgia Constitution provides that "All government, of right, originates with the people, is founded upon their will only, and is instituted solely for the good of the whole." Art. I, Sec. II, Par. I; Const. of 1976 (Code § 2-201). "Protection to person and property is the paramount duty of government, and shall be impartial and complete." Const. Art. I, Sec. II, Par. III (Code Ann § 2-203). "No person shall be deprived of the right to prosecute or defend his own cause in any of the courts of this State, in person, by attorney, or both." Const. Art. I, Sec. I, Par. IX; Code § 2-109. "Every person may recover for torts committed to himself..." Code § 105-107.

None of these constitutional or statutory provisions sanctions the denial of civil rights simply because the parties are married to each other. It is clear that prohibiting a wife from suing her husband in tort (or vice versa) contravenes the spirit of these mandates and the irrefutable edict that individual human liberties must be protected from discriminatory classifications. "There are no longer any valid reasons for adhering to our judicially created . . . rule. Continued adherence to the . . . common law distinctions can only lead to injustice or, if injustice is to be avoided, further fictions resulting in complexity and confusion." *Bickford v. Nolen,* 142 Ga. App. 256, 261 (235 SE2d 743) (1977).

Reason and justice notwithstanding, here as in *Bickford,* we are bound by the decisions of the Supreme Court upholding the common law rule, and are powerless to act. The challenge to its constitutionality and correctness must be addressed to that court, and we must affirm the dismissal of the complaint against Bradley.

2. However, we reverse the grant of summary judgment to Tenneco. The affidavits place in issue the questions of malice on the part of Bradley and the absence of probable cause for Mrs. Bradley's arrest and incarceration, which must be proved to recover for malicious prosecution or malicious arrest under Code §§ 105-801, 105-805, 105-1001. See *Gaddy v. Gilbert,* 140 Ga. App. 508 (231 SE2d 403) (1976). Want of probable cause is a question for the jury (Code § 105-802) and Tenneco cannot avoid liability merely because Bradley may not be sued individually. His act " ' remains the unlawful act of

both the master and the servant; and, although the remedy is denied the wife as against her husband, the fact of that denial cannot, in logic, be available to the master for his independent and distinct liability. The tortious act of the servant is none the less unlawful, although the wife is denied a remedy in the courts therefor. In line therewith, we are therefore of the opinion that if, in a case where the tortious act of the servant is the act of the master, the master is liable proximately even though the wife may not recover from the husband, the servant. She is merely denied a remedy; this does not destroy the right of action against the master.' " *Garnto v. Henson,* 88 Ga. App. 320, 324 (3) (76 SE2d 636) (1953).

Moreover, the allegations of slander were made not only as to Bradley but also as to other agents of Tenneco, and this issue was also adequately raised by the evidence. Code § 105-702.

*Judgment affirmed as to Bradley and reversed as to Tenneco. Quillian, P. J., and McMurray, J., concur.*

ARGUED APRIL 6, 1978 — DECIDED MAY 17, 1978—
REHEARING DENIED JUNE 9, 1978 —

*Glenville Haldi, Zagoria & Stoner, Michael A. Stoner,* for appellant.

*Freeman & Hawkins, Alan F. Herman, Michael J. Goldman, Reid Kennedy, Edwin Marger, J. Timothy Lawler, Robert O. Davies,* for appellees.