A97A1123. WALTON ELECTRIC MEMBERSHIP CORPORATION v. SNYDER.

(487 SE2d 613)

ELDRIDGE, Judge.

This case arose over a disputed electrical bill in the amount of $301.28. The chronology of events is as follows:

On August 26, 1992, Deborah Patton, while residing at Kings Mill Run in Clarke County, signed a contract with appellant Walton Electric Membership Corporation ("Walton Electric") and was assigned member account number 402678-01. In September of the following year, 1993, appellee Howard Snyder signed a contract with Walton Electric and was assigned member account number 410826-01;[1] Snyder resided at the Creekview Court apartments in Clarke County.

In October 1993, after she had resided at Kings Mill Run for over a year, Deborah Patton moved into the Creekview Court apartment with Howard Snyder; when she left Kings Mill Run, she had an overdue balance on her electric bill in the amount of $301.28.

Patton and Snyder were married in December 1994. In January 1995, Snyder purchased the Kings Mill Run residence that had been occupied by Deborah Patton, now Snyder, approximately a year and a half earlier. Appellee Snyder applied for electricity to the residence under his existing account; as Walton Electric notes, "no new membership application was required," since Snyder had previously signed such application.

Electric service was begun at appellee Snyder's new residence under Snyder's membership account; however, Walton Electric had become aware that past due account member Deborah Patton was now Snyder's wife. Walton Electric transferred her outstanding debt to Snyder's membership account, which was also assigned a new account number, 410826-02. Snyder protested, and a series of telephone calls ensued which evidently served only to create and increase hostilities between both parties. As an apparent result, Snyder refused to pay the outstanding bill.[2] Snyder claimed that he had not incurred the debt; that his membership account was current; and that Walton Electric could not assess him with a debt belonging to another person. After notice, Walton Electric disconnected Snyder's electricity for approximately 24 hours for the failure to pay the $301.28 plus late fees. Snyder was forced to reside in a motel overnight, and paid the debt "under protest."

Howard Snyder filed suit, claiming an unjustified, wrongful termination of electrical services and seeking actual, as well as punitive, damages; Snyder moved for partial summary judgment on the

[1] Snyder and Walton Electric became contractually bound under the terms of his membership agreement which states "[a]cceptance of this application by the Cooperative shall constitute a contract between the Applicant and the Cooperative[.]" There is no dispute that said application was accepted by Walton Electric.

[2] There is no dispute that Deborah Patton Snyder owes Walton Electric $301.28 plus late fees under her membership contract. Evidence was introduced demonstrating the Snyders' intent to pay the bill when it is assessed against Deborah Patton Snyder's membership account.

issue of liability. Walton Electric filed a cross-motion for summary judgment, claiming that the contractual relationship between Walton Electric and Snyder permitted the termination of appellee's service and thus, Walton Electric was entitled to summary judgment as a matter of law; further, appellant asserted that since Snyder's claim was really one in contract, as opposed to tort, it was entitled to summary judgment on the issue of punitive damages as a matter of law. The trial court granted Snyder's motion for summary judgment as to Walton Electric's tort liability; the trial court denied Walton Electric's cross motions for summary judgment based upon its membership contract with Snyder and as to the issue of punitive damages. Walton Electric appeals. *Held*:

1. First, Walton Electric challenges the trial court's denial of its motion for summary judgment as to the merits of appellee's claim. Appellant contends that judgment in its favor is warranted as a matter of law because under the regulations and bylaws of Walton Electric, by which terms he agreed to be bound,[3] Snyder became liable for the debt owed to it by Deborah Patton either: (1) when she moved in with appellee Snyder and received Walton Electric services under Snyder's membership account; or (2) when Snyder married her and they became "joint" members; thus, Walton Electric argues that it was justified in disconnecting appellee's electricity for failure to pay the outstanding debt pursuant to his contract terms.

We find that the trial court correctly determined that appellee Snyder is not liable for the individual debt of another without assuming such debt in writing. OCGA § 13-5-30 (2). This result does not change because the individual debt was accrued by a spouse. OCGA § 19-3-9; *Orr v. Orr*, 440 U. S. 268 (99 SC 1102, 59 LE2d 306) (1979); *Sessions v. Parker*, 174 Ga. 296 (162 SE 790) (1932); *Bradley v. Tenneco Oil Co.*, 146 Ga. App. 161, 164, n. 1 (245 SE2d 862) (1978); *Butler v. Godley*, 51 Ga. App. 784 (181 SE 494) (1935). While a promise to pay the debt of another which is an "original undertaking" is not within the statute, such promise has been described as "an original undertaking in which the new promisor, for valuable consideration, *substitutes himself* as the party who is to perform and *the original promisor is released*." (Emphasis in original.) *Donald H. Gordon Co. v. Carswell*, 184 Ga. App. 701, 704 (362 SE2d 483) (1987). Obviously, this is not the situation before the court, wherein Snyder has always denied liability on the debt, and Deborah Patton has always insisted the debt is hers. Thus, contrary to Walton Electric's assertions, the terms of the contract, itself, signed by Snyder could not and did not

---

[3] Snyder's contract specifies that he "will comply with and be bound by the provisions of the certificate of incorporation and bylaws of [Walton Electric], and such rules and regulations as may from time to time be adopted [thereby]."

create an enforceable "original undertaking" to assume another person's debt, at some unknown time in the future, without consideration therefor. Besides, "[a] promise to pay the pre-existing debt of another, without any detriment or inconvenience to the creditor, or any benefit secured to the debtor in consequence of the undertaking is a mere nudum pactum." (Citations and punctuation omitted.) *Davis v. Tift*, 70 Ga. 52, 56 (2) (1883); OCGA § 13-3-40. Accordingly, to the extent that any of the bylaws, rules, or regulations of Walton Electric may be fairly read to permit such assumption of debt, they are in violation of Georgia law and are unenforceable. OCGA § 46-3-201 (a) (2), (b) (26), (d).

Perhaps more important, however, is the recognition that the bylaws and regulations upon which appellant Walton Electric relies cannot be fairly read to support its contentions.

First, Walton Electric cites its Service Rules & Regulations, No. 604 (A) (5), which provides that "service will be disconnected immediately and without notice" for: "Member having old debt living at location with account in some other name." Clearly, this provision, albeit unartfully drawn, provides for the disconnection of a member who obtains electric services fraudulently by opening an account in another name in order to avoid paying an old bill, i.e., the *member* has an account in "some other name" and not, as appellant attempts to read it, the location has an account in some other name.[4] As appellant notes in its brief, such provision "prevents members from avoiding bills by putting the membership in a different name." The cited provision seeks to deter and punish the delinquent member; it does not intend to penalize another member's bona fide account in good standing because of an association with the delinquent member. Common sense and due process would dictate that the mere presence of an offending member as a co-resident in a location cannot "taint" another resident's bona fide and current membership account so as to permit the disconnection of service thereon immediately and without notice until the transgressing member/resident's old bill is paid.

Next, appellant cites from the Bylaws of the Walton Electric Membership Corporation, § 1.04, which states in pertinent part: "The term 'member' as used in these Bylaws shall mean a husband and wife *holding* a joint membership and any provisions relating to the rights and liabilities of membership shall apply equally with respect

---

[4] Under Walton Electric's contract provisions, membership accounts are held by people/members, not locations; thus, a location cannot have an "account in some other name." Further, debt remains with the individual member, not the location serviced, thereby making unproductive appellant's reliance on that limited body of case law permitting a lien against a location for unpaid water usage. See, e.g., *Harrison v. Jones*, 226 Ga. 344 (175 SE2d 26) (1970).

to the holders of a joint membership, unless one or both request in writing that the membership be singular and held by only one of them." (Emphasis supplied.) Clearly, this provision relates to a husband and wife who apply for membership and, by virtue of their status at the time of application, "hold" joint membership, unless such is designated otherwise via a written request. This language does not and cannot be read to impact in any way upon an individual's pre-existing singular membership contract, such as the one signed by appellee.

In fact, the contract signed by appellee Snyder specifically provides that "membership of a husband and wife shall be a joint membership *unless one or both request in writing that the membership shall be singular.*" (Emphasis supplied.) The contract provided spaces for a spouse's name and employer; Snyder, being single at the time the contract was entered into, left these spaces blank, and a singular membership was formed. Upon his marriage to Deborah Patton, Snyder did not have to write Walton Electric and request that his membership be made singular pursuant to the above contract provision, because his membership was already singular. Further, common sense would, again, seem to impose the notion that if a specific writing is necessary to turn an existing joint membership into a singular one, the same process must be utilized to turn an existing singular membership into a joint one.[5] An existing singular contract cannot automatically become "reformed" by virtue of the established member's subsequent marriage. See generally *Cotton States Mut. Ins. Co. v. Woodruff,* 215 Ga. App. 511 (451 SE2d 106) (1994) (reformation of contract is equitable remedy reflecting true intent of parties, which intent must be pled and proved).

In sum, Walton Electric has provided no legitimate basis for assigning contract liability to appellee Snyder for the previously accrued debt of his wife. Such liability has no support in either Georgia law or in a fair reading of Walton Electric's own bylaws and regulations. Accordingly, summary judgment based on such ground was not warranted as a matter of law, and the trial court properly denied Walton Electric's motion thereon. See *Lau's Corp. v. Haskins,* 261 Ga. 491 (405 SE2d 474) (1991).

2. Appellant Walton Electric also challenges the trial court's granting of summary judgment as to its liability under appellee Snyder's claim of tortious termination of services. In support of this challenge, appellant contends that appellee's complaint sets forth a claim ex contractu and thus, recovery for the tort of wrongful termination of services is precluded as a matter of law.

---

[5] Such notion would also comport with Georgia law regarding assumption of debt.

The complaint of appellee Snyder which alleges that Walton Electric terminated "his electricity wrongfully and without justification" in actions that were "willful, wanton, and done to coerce him into compliance with Defendant's demands," obviously sets forth a cause of action sounding in tort. Moreover, such cause of action has been recognized in this state. *Freeman v. Macon Gas &c. Co.*, 126 Ga. 843 (56 SE 61) (1906); *Hunnicutt v. Ga. Power Co.*, 168 Ga. App. 525 (309 SE2d 862) (1983); see also *Milledgeville Water Co. v. Fowler*, 129 Ga. 111, 113-114 (58 SE 643) (1907).

Further, it is well settled that misfeasance in the performance of a contractual duty may give rise to a tort action. *Manley v. Exposition Cotton Mills*, 47 Ga. App. 496, 497 (170 SE 711) (1933). "[I]n order to maintain an action ex delicto because of a breach of duty growing out of a contractual relation, the breach must be shown to have been a breach of a duty imposed by law and not merely the breach of a duty imposed by the contract itself." *Mauldin v. Sheffer*, 113 Ga. App. 874, 879-880 (150 SE2d 150) (1966). Walton Electric's duty to its members arises from its special relationship to them as the sole supplier of electricity to their area[6] and its duty under the law to furnish electrical energy and service to its members. OCGA §§ 46-3-2; 46-3-12; 46-3-200; see also *Freeman*, supra at 846-847; *Hunnicutt*, supra. Furthermore, appellant's contention that it is an "electrical membership" rather than an electric company is a distinction without a difference with regard to its tort liability for wrongful termination of services. OCGA §§ 46-3-12; 46-3-201 (a) (3) (C); see also *Sowell v. Douglas County EMC*, 150 Ga. App. 520 (258 SE2d 149) (1979) (citing 4 ALR3d 594; see § 9, recognizing that electric company or membership owes legal duty to consumer not to shut off power unjustifiably, which action creates liability in tort, not contract). Thus, contrary to appellant's assertions, appellee Snyder's claim for the wrongful termination of electrical services, which claim was properly raised by the pleadings, is not precluded as a matter of law.

Herein, the trial court correctly determined that appellee Snyder demonstrated through evidence of record that Walton Electric disconnected his electricity because of a debt incurred by another; that such act was without justification since he was not liable for said debt; and that such wrongful action resulted in damage to him. See *Hunnicutt*, supra. This prima facie showing was sufficient to shift the burden to

---

[6] In the area in which appellee lives, one contracts with Walton Electric or one does not receive electricity. Essentially, this is a contract of adhesion, which has been defined as a standardized contract offered on a "take it or leave it" basis and under such conditions that a consumer cannot obtain the desired product or service except by acquiescing in the form contract. Black's Law Dictionary, 5th ed., p. 38. Such contracts, while permissible, are construed strictly against the drafter. *Rossville Fed. Sav. &c. Assn. v. Ins. Co. of North America*, 121 Ga. App. 435 (174 SE2d 204) (1970).

appellant Walton Electric to come forward with rebuttal evidence demonstrating a genuine issue of material fact for trial. *Bates v. Guar. Nat. Ins. Co.*, 223 Ga. App. 11, 15 (476 SE2d 797) (1996). "If the defendant fails to respond with specific facts . . . summary judgment is properly granted." (Citations and punctuation omitted.) Id. In the case sub judice, there was no showing of a genuine issue of material fact for trial. Consequently, the trial court did not err in granting Howard Snyder's motion for summary judgment as to the issue of Walton Electric's liability on Snyder's tort claim.

3. In addition, Walton Electric contends that the trial court erred in denying its motion for summary judgment with regard to the issue of punitive damages,[7] since such damages are not authorized in cases arising on contract. Our decision in Division 2 herein renders this assertion meritless. Accordingly, we affirm the trial court's order on the parties' summary judgment motions and remand the case for a determination of damages to be awarded.

*Judgment affirmed and remanded for action not inconsistent with this opinion. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED MAY 22, 1997 —
RECONSIDERATION DENIED JUNE 4, 1997 — 
 Before Judge Sorrells.
*Lambert & Roffman, E. R. Lambert, Marvin J. Reitman, Jr.*, for appellant.
*James M. Green, Gerald W. Bruce*, for appellee.

---

[7] Walton Electric is vested with the power to sue and be sued (OCGA § 46-3-201 (a) (3)) and is provided with no express statutory immunity from liability for punitive damages. *Oglethorpe Power Corp. v. Sheriff*, 210 Ga. App. 299, 302 (5) (436 SE2d 14) (1993). Compare *MARTA v. Boswell*, 261 Ga. 427 (405 SE2d 869) (1991).